

1  Mark E. Merin (State Bar No. 043849)
   Paul H. Masuhara (State Bar No. 289805)
2  LAW OFFICE OF MARK E. MERIN
   1010 F Street, Suite 300
3  Sacramento, California 95814
   Telephone:    (916) 443-6911
4  Facsimile:    (916) 447-8336
   E-Mail:       mark@markmerin.com
5                paul@markmerin.com

6
   Attorneys for Plaintiffs
7  BEAU BANGERT
   and the Settlement Class
8

FILED UNDER SEAL
PER ECF NO. 61

FILED
Jan 3, 2019
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

SEALED

9                    UNITED STATES DISTRICT COURT

10                   EASTERN DISTRICT OF CALIFORNIA

11                       SACRAMENTO DIVISION

12 BEAU BANGERT, on behalf of himself and          Case No. 2:17-cv-01667-KJN
   a class of similarly situated persons,
13                                                  **PLAINTIFFS' MEMORANDUM OF POINTS
                                                    AND AUTHORITIES IN OPPOSITION TO
14              Plaintiffs,                          COUNTY DEFENDANTS'
                                                    MOTION FOR PROTECTIVE ORDER**
15 vs.

16 COUNTY OF PLACER, et al.,                        Date:       January 17, 2019
                                                    Time:       10:00 a.m.
17              Defendants.                          Location:   Robert T. Matsui U.S. Courthouse
                                                                501 I Street
18                                                              Sacramento, California  95814
19                                                  Courtroom:  25 (8th Floor)
                                                    Magistrate
20                                                  Judge:      Hon. Kendall J. Newman

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    **INTRODUCTION**.................................................................................................1

II.   **STATEMENT OF RELEVANT FACTS**.........................................................1

   A.   **THE FACTS GIVING RISE TO THIS ACTION** ...............................1

   B.   **THE SHERIFF'S PRESS CONFERENCE** ......................................2

   C.   **THE CRIMINAL PROCEEDINGS** ...................................................2

   D.   **THE CITIZEN'S COMPLAINT** ........................................................3

   E.   **THE CIVIL LITIGATION & DISCOVERY** .....................................3

   F.   **THE CLASS ACTION SETTLEMENT** .............................................6

   G.   **THE "CONFIDENTIAL" DESIGNATION CHALLENGE** ................6

III.  **ARGUMENT** ........................................................................................................6

   A.   **THE MOTION FAILS TO COMPLY WITH E.D. CAL. L.R. 251**.............7

   B.   **THE MOTION FAILS TO ESTABLISH "GOOD CAUSE"** ....................8

      1.   The Public's Interest In Learning About Police Misconduct Precludes "Good Cause"...............9

      2.   The Existence Of A Stipulated Protective Order Does Not Constitute "Good Cause" ..............10

      3.   The Existence Of A Settlement Agreement Does Not Constitute "Good Cause" ......................12

      4.   Hypothetical "Tainted Jurors" Do Not Constitute "Good Cause"................................................13

      5.   Revealing The Identities Of Involved Officers Does Not Constitute "Good Cause"................15

   C.   **THE MOTION FAILS TO ESTABLISH "COMPELLING REASONS"** .................16

   D.   **PLAINTIFFS ARE ENTITLED TO ATTORNEYS' FEES IN OPPOSITION** .....................17

IV.  **CONCLUSION** ..................................................................................................18

**TABLE OF AUTHORITIES**

CASES

*Ahmadi v. United Cont'l Holdings, Inc.*, 2015 U.S. Dist. LEXIS 74604 (E.D. Cal. June 8, 2015) .............8

*Am. Eagle Wheel Corp. v. Tire & Wheel Outlet*, 2007 U.S. Dist. LEXIS 15408 (E.D. Cal. Feb. 20, 2007)8

*Archibald v. County of San Bernardino*, 2018 U.S. Dist. LEXIS 171243 (C.D. Cal. Oct. 2, 2018)............9

*Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992)......................................................8, 11, 12

*Bissell v. United States*, 321 Fed. Appx. 549 (9th Cir. 2008) .....................................................17

*Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349 (9th Cir. 2013)...........................11, 13

*Boskoff v. Yano*, 217 F. Supp. 2d 1077 (D. Haw. 2001) .................................................................16

*Carver Int'l, Inc. v. Surfskate Indus., LLC*, 2016 U.S. Dist. LEXIS 193792 (C.D. Cal. May 25, 2016)......7

*CBS v. U.S. Dist. Court*, 729 F.2d 1174 (9th Cir. 1983)....................................................................14

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)....................................................17

*Doe v. Marsalis*, 202 F.R.D. 233 (N.D. Ill. 2001) ..........................................................................13

*Estate of Crawley v. Kings County*, 2015 U.S. Dist. LEXIS 59439 (E.D. Cal. May 6, 2015) ..................8

*Foltz v. State Farm Mut. Auto. Inc. Co.*, 331 F.3d 1122 (9th Cir. 2003)....................................................14

*Gordon v. City & County of San Francisco*, 2004 U.S. Dist. LEXIS 20021 (N.D. Cal. Apr. 30, 2004) ...15

*Harmon v. City of Santa Clara*, 323 F.R.D. 617 (N.D. Cal. 2018) ....................................................12, 15

*In re S. Ohio Corr. Facility*, 24 F. App'x 520 (6th Cir. 2001) ............................................................12

*Johnson v. Parchment Sch. Dist.*, 2006 U.S. Dist. LEXIS 28230 (W.D. Mich. May 5, 2006) ................15

*Kamakana v. City & County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006)...............................8, 14, 16, 18

*Kaur v. City of Lodi*, 2014 U.S. Dist. LEXIS 110079 (E.D. Cal. Aug. 7, 2014)......................................13

*Kaur v. City of Lodi*, 2015 U.S. Dist. LEXIS 2739 (E.D. Cal. Jan. 9, 2015) ...........................................9

*Kaur v. City of Lodi*, 2015 U.S. Dist. LEXIS 69161 (E.D. Cal. May 19, 2015) .......................................17

*Lissner v. U.S. Customs Serv.*, 241 F.3d 1220 (9th Cir. 2001) ...............................................................15

*Macias v. Cleaver*, 2016 U.S. Dist. LEXIS 85529 (E.D. Cal. June 30, 2016) ................1, 9, 14, 15, 16, 17

*McGee v. City of Chicago*, 2005 U.S. Dist. LEXIS 30925 (N.D. Ill. June 23, 2005) ...............................16

*Mendez v. City of Gardena*, 222 F. Supp. 3d 782 (C.D. Cal. 2015) ................................11, 12, 13, 14, 15

*Mitchell v. Cate*, 2016 U.S. Dist. LEXIS 94791 (E.D. Cal. July 19, 2016).............................................16

ii

**PLAINTIFFS' OPPOSITION TO COUNTY DEFENDANTS' MOTION FOR PROTECTIVE ORDER**
*Bangert v. County of Placer*, United States District Court, Eastern District of California, Case No. 2:17-cv-01667-KJN

*Mlejnecky v. Olympus Imaging Am.*, 2011 U.S. Dist. LEXIS 16128 (E.D. Cal. Feb. 7, 2011)...................3

*Moulay v. RagingWire Enter. Sols.*, 2010 U.S. Dist. LEXIS 122902 (E.D. Cal. Nov. 3, 2010) ...............12

*Nixon v. Warner Commc'ns*, 435 U.S. 589 (1978) .................................................................................16

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994) ..............................................................16

*Phillips ex rel. Estates of Byrd v. Gen'l Motors Corp.*, 307 F.3d 1206 (9th Cir. 2002)...........................8

*Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665 (9th Cir. 2010) .................................................................8

*Rivera v. NIBCO, Inc.*, 384 F.3d 822 (9th Cir. 2004) ..............................................................................9

*Rosales v. City of Chico*, 2015 U.S. Dist. LEXIS 126034 (E.D. Cal. Sep. 18, 2015) ..............................10

*San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096 (9th Cir. 1999) ...................................9

*Seattle Times Co. v. U.S. Dist. Court*, 845 F.2d 1513 (9th Cir. 1988)....................................................14

*United States v. First Nat'l Bank*, 732 F.2d 1444 (9th Cir. 1984) ..........................................................17

*Weldon v. Dyer*, 2015 U.S. Dist. LEXIS 27924 (E.D. Cal. Mar. 6, 2015) ................................................8

*Welsh v. City & County of San Francisco*, 887 F. Supp. 1293 (N.D. Cal. 1995).................1, 9, 14, 15, 16

*White v. Sabatino*, 2007 U.S. Dist. LEXIS 69178 (D. Haw. Sept.17, 2007)...........................................16

*Wiggins v. Burge*, 173 F.R.D. 226 (N.D. Ill. 1997) .............................................................................9, 10

*Yeti By Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101 (9th Cir. 2001)........................................17

<u>RULES</u>

E.D. Cal. L.R. 251(b) ...............................................................................................................................7

E.D. Cal. L.R. 251(c) ...............................................................................................................................7

Fed. R. Civ. P. 26(c)(1)(B) ......................................................................................................................8

Fed. R. Civ. P. 26(c)(3).........................................................................................................................17

Fed. R. Civ. P. 26(d)(1).........................................................................................................................3

Fed. R. Civ. P. 37(a)(5)(B) ..........................................................................................................7, 17, 18

Fed. R. Civ. P. 37(a)(5)(C) ......................................................................................................................7

iii

## I.   <u>INTRODUCTION</u>

The allegations in this case are bad. But the videos depicting the incidents giving rise to those allegations, and the false incident reports prepared by involved officers in attempt to justify their actions, are worse. Moving Defendants conceded that the actions of their employees in connection with the incidents were unlawful, yet they seek a protective order over *all materials* associated with the incidents, for the express purpose of preventing public disclosure and, potentially, those materials going "viral."

But "this Court must refuse requests to engage in damage control on behalf of the Defendants." *Macias v. Cleaver*, 2016 U.S. Dist. LEXIS 85529, at *14 (E.D. Cal. June 30, 2016). "'Lawfulness of police operations is a matter of great concern to citizens in a democracy and protective orders must not be granted without that public interest in mind.'" *Welsh v. City & County of San Francisco*, 887 F. Supp. 1293, 1302 (N.D. Cal. 1995). Accordingly, Plaintiffs Beau Bangert and the Settlement Class (collectively, "Plaintiffs") file the following in opposition to Defendants County of Placer, Placer County Sheriff's Office, and Devon M. Bell's (collectively, "County Defendants") motion for protective order to deny the public's access to the materials forming the basis of this serious police misconduct case.

## II.   <u>STATEMENT OF RELEVANT FACTS</u>

### A.   THE FACTS GIVING RISE TO THIS ACTION

This case arises from the jailhouse beating of Plaintiff Beau Bangert ("Plaintiff")[1] at the Auburn Mail Jail by several correctional officers who either directly participated in the beating, aided and abetted the beating, and/or failed to report or failed to accurately report the excessive and unreasonable use of force of their fellow officers.

On May 14, 2017, Plaintiff, while experiencing an episode of mental-illness associated with his diagnosed schizophrenia, was repeatedly punched, kneed, and choked by Defendant Robert L. Madden ("Madden") and repeatedly tased by Defendant Megan C. Yaws ("Yaws"), while fellow officers Aubrey R. Harris and M. Ramirez held Plaintiff's arms behind his back, preventing Plaintiff from protecting himself. Plaintiff was then confined to a restraint chair as he bled profusely. (These events are depicted on the video recordings [PC000142-43] and Plaintiff's injuries reflected in photographs [PC000144-56]

---

[1] "Plaintiff" is referred to in the singular form where he and counsel were proceeding *prior to* September 7, 2018, after which time this Court preliminarily certified the Settlement Class. (*See* ECF No. 59.)

1

that are the subjects of County Defendants' underlying "motion to retain confidentiality.")

Subsequent to the beating, Defendants Madden and Yaws and fellow officers Aubrey R. Harris and M. Ramirez prepared false incident reports that materially misrepresented the incident, as confirmed by the video recording of the beating. (These reports [PC001526-32] are the subject of County Defendants' underlying "motion to retain confidentiality.") For example:

a.   Defendant Megan C. Yaws falsely reported: "When the door was opened, Bangert widened his stance and began swinging at [] Madden."

b.   Deputy M. Ramirez falsely reported: "As the door to cell 27 was opened, Bangert attempted to punch at Madden." "Bangert attempted to punch and push back at Madden."

c.   Defendant Robert L. Madden falsely reported: "I hit B[angert] with the shield approximately in the middle of the cell. B[angert] stood his ground as we screamed at him to get on the ground. I hit B[angert] with the shield two more times trying to knock him over. B[angert] still stood his ground and at this point had his back against the wall." "At some point during the fight B[angert] had punched me in my right eye with a closed fist."

d.   Deputy Aubrey R. Harris falsely reported: "B[angert] … was attempting to strike at officers with his fists."

**B.    THE SHERIFF'S PRESS CONFERENCE**

On May 31, 2017, Defendant Devon M. Bell ("Bell") conducted a press conference wherein he, as sheriff, announced that three deputies employed at the Auburn Main Jail had been terminated as employees and arrested. (Declaration of Mark E. Merin ("Merin Decl."), ¶2 & Ex. 1 [6/1/17 Sac Bee Article].) At the press conference, Defendant Bell stated that the "conduct was limited to a very small number of people." (*Id.*) Additionally, Defendant Bell stated that he would have liked to release the incriminating video to the public, but the Placer County District Attorney's Office had requested he not do so because "[i]t could color people's perspectives of what happened" and "[i]t's an ongoing criminal investigation and due process is absolutely key when you're talking about justice." (*Id.*)

**C.    THE CRIMINAL PROCEEDINGS**

On May 31, 2017, Defendants Madden and Yaws were criminally charged in *People v. Madden*, Superior Court of California, County of Placer, Case No. 62-152693A & *People v. Yaws*, Superior Court

2

of California, County of Placer, Case No. 62-152693B. (Merin Decl., ¶3 & Ex. 2 [Felony Complaint].) (A third defendant, Jeffrey J. Villanueva, who was not involved in Plaintiff's beating, was also charged therein.) The Felony Complaint identified six alleged incidents of misconduct by Auburn Main Jail personnel and six subjects/victims of their abuse, with charges including "Assault by a Public Officer" and "Filing a False Report." (*Id*.)

On April 18, 2018, criminal charges against Defendant Yaws were dismissed. (Merin Decl., ¶4 & Ex. 3 [Yaws Docket].)

On April 25, 2018, Defendant Madden pled *nolo contendere* to a charge of felony assault. (Merin Decl., ¶5 & Ex. 4 [Madden Docket].)[2]

## D.   THE CITIZEN'S COMPLAINT

On August 7, 2017, Plaintiff filed a citizen's complaint related to the May 14, 2017, beating he sustained at the Auburn Main Jail. (Merin Decl., ¶7 & Ex. 6 [IA Complaint].)

On February 1, 2018, the Placer County Sheriff's Office stated that "[a]n internal investigation ha[d] been completed" concerning Plaintiff's citizen's complaint and "[a] finding of sustained ha[d] been assigned to the allegation of excessive use of force." (Merin Decl., ¶8 & Ex. 7 [IA Finding].)

## E.   THE CIVIL LITIGATION & DISCOVERY

On August 11, 2017, Plaintiff filed a class action complaint initiating this action and alleging various federal and state law claims. (ECF No. 1.) The complaint's allegations stated that Plaintiff's beating was not an isolated incident but, rather, part of a pervasive policy or custom of excessive use of force by Auburn Main Jail personnel against inmates. (*Id*.)

On August 11, 2017, the Court issued the "Initial Pretrial Scheduling Order" which required that the parties conduct a Fed. R. Civ. P. 26(f) conference "[w]ithin sixty (60) days of service of the complaint on any party…" (ECF No. 3 at 2:14-16 (fn. omitted).)[3]

---

[2] On October 9, 2018, Jeffrey J. Villanueva similarly pled *nolo contendere* to a charge of felony assault. (Merin Decl., ¶6 & Ex. 5 [Villanueva Docket].)

[3] The timing of a Fed. R. Civ. P. 26(f) conference is significant because "a party may generally seek discovery from any source after the parties confer as required by [Fed. R. Civ. P.] 26(f)." *Mlejnecky v. Olympus Imaging Am.*, 2011 U.S. Dist. LEXIS 16128, at *15-16 (E.D. Cal. Feb. 7, 2011) (citing Fed. R. Civ. P. 26(d)(1)).

On August 14, 2017, County Defendants and Defendants Yaws and Madden were served with process. (ECF Nos. 4, 5, 6, 7 & 8.)

On September 14, 2017, Plaintiff's counsel personally met and conferred with County Defendants and Defendants Yaws and Madden's counsel. (Merin Decl., ¶9.)

On September 25, 2017, Plaintiff's counsel provided a proposed discovery plan to Defendants' counsel. (Merin Decl., ¶10 & Ex. 8 [9/25/17 PHM Email].)

On October 6, 2017, Plaintiff's counsel personally met and conferred with County Defendants counsel for a second time. (Merin Decl., ¶11.)

On October 10, 2017, County Defendants proposed in an email message that "[the parties] agree to stay all aspects of this case, including initial disclosures" and, "while the stay is in place, [the parties] work cooperatively towards a [settlement], and engage in informal discovery, with a protective order in place preventing disclosure outside of this case with any information [parties] share." (Merin Decl., ¶12 & Ex. 9 [10/10/17 BL Email].)

On October 13, 2017, Plaintiff's counsel responded to County Defendants' counsel's request to "stay" the case pending settlement discussions, in relevant part:

> [T]here are certain documents and specific information that we must have access to in order to resolve this case—especially if that resolution is to encompass the claims of the putative class we have alleged to exist through this action. Accordingly, now that discovery in this matter has opened, I am attaching a set of requests for production of documents. (I have forward-dated these requests and will not actually serve them until October 16, 2017, since today's date represents the final date by which the parties are required to conduct a Fed. R. Civ. P. 26(f) conference, after which discovery opens.) Generally, a party is required to respond to such a request within 30 days, Fed. R. Civ. P. 34(b)(2)(A), with an additional three days where served by mail, Fed. R. Civ. P. 6(d), but since we are discussing an approach to resolution, we are willing to entertain extensions of time to respond to parts of these requests.

(Merin Decl., ¶13 & Ex. 10 [10/13/17 MEM Letter].)

On October 16, 2017, Plaintiff served Defendant County of Placer with requests for production of documents. (Merin Decl., ¶14 & Ex. 11 [RPD].)

On November 2, 2017, County Defendants and Defendants Yaws and Madden filed answers to the complaint. (ECF Nos. 18, 19 & 20.)

On December 6, 2017, the scheduling order in this action was vacated and the action was related

4

1  and reassigned based on the pendency of similar pending actions: *Langley v. Domeier*, Case No. 2:17-cv-

2  00760-GEB-KJN; *Conner v. Placer County*, Case No. 2:17-cv-01830-TLN-DB; *Kershner v. Placer

3  County*, Case No. 2:17-cv-02312-MCE-GGH; and *Coleman v. Placer County*, Case No. 2:17-cv-01579-

4  WBS-CKD. (ECF No. 27.)

5      On December 8, 2017, Plaintiff's counsel requested that "the County provide responses to some

6  informal discovery" related to the putative class "for use only in an attempt[] to settle this action through

7  mediation…" (Merin Decl., ¶15 & Ex. 12 [12/8/17 MEM Email].)

8      On January 3, 2018, Plaintiff's counsel reiterated to County Defendants' counsel his request for

9  "informal discovery." (Merin Decl., ¶16 & Ex. 13 [1/3/18 MEM Email].)

10      On January 5, 2018, the parties submitted a Joint Status Report, wherein Plaintiff stated that he

11  "ha[d] not yet received responses to [discovery] requests and ha[d] agreed to delay the date by which

12  responses [were] required, based on the parties' mutual agreement to pursue a class-wide settlement of

13  this action." (ECF No. 28 at 7:15-18.)

14      On January 19, 2018, the parties jointly requested the scheduling of a settlement conference.

15  (ECF No. 29.)

16      On February 6, 2018, Plaintiff's counsel reiterated to County Defendants' counsel his request for

17  "informal discovery" and "immediate access to [] whatever video there is of Bangert's treatment" at the

18  Auburn Main Jail. (Merin Decl., ¶17 & Ex. 14 [2/6/18 MEM Email].)

19      On March 8, 2018, a settlement conference was scheduled by the Court. (ECF No. 34.)

20      On March 12, 2018, the parties filed a stipulated protective order. (ECF No. 35.)

21      On March 26, 2018, the Court approved and issued the parties' stipulated protective order. (ECF

22  No. 36.)

23      On March 27, 2018, County Defendants produced some "informal document productions,"

24  including class-related discovery and videos of the subject incidents. (Merin Decl., ¶18 & Ex. 15

25  [3/27/18 BL Letter].)

26      On April 4, 2018, County Defendants produced additional documents supplementing those

27  documents produced on March 27, 2018. (Merin Decl., ¶19 & Ex. 16 [4/4/18 BL Letter].)

28      On May 2, 2018, County Defendants produced "updated responses" supplementing those

5

1  documents produced on March 27, 2018. (Merin Decl., ¶20 & Ex. 17 [5/2/18 BL Letter].)

2  **F.    THE CLASS ACTION SETTLEMENT**

3         On May 15 and 16, 2018, the parties attended and participated in a settlement conference before

4  the Court. (ECF Nos. 47 & 49.) At the conclusion of the settlement conference, the parties reached a

5  verbal agreement to resolve both Plaintiff's individual and class claims. (ECF No. 49.)

6         On August 28, 2018, Plaintiff filed an unopposed application for preliminary approval of the class

7  action settlement. (ECF No. 57.)

8         On September 7, 2018, the Court preliminarily approved the class action settlement, setting a

9  Final Approval Hearing for March 28, 2019. (ECF No. 59.)

10  **G.    THE "CONFIDENTIAL" DESIGNATION CHALLENGE**

11         On October 12, 2018, County Defendants' counsel stated in an email to Plaintiffs' counsel: "Now

12  that Coleman, Langley and Kershner are wrapped up, we wanted to request that pursuant to the

13  Protective Order you please either return the videos of those incidents to my office or confirm in writing

14  they are destroyed." (Merin Decl., ¶21 & Ex. 18 [10/12/18 JMR Email].)

15         On November 6, 2018, Plaintiffs' counsel responded in a correspondence that they were

16  challenging the "Confidential" designation applied to the video recordings, photos, and incident reports

17  concerning Plaintiff Bangert's beating. (Merin Decl., ¶22 & Ex. 19 [11/6/18 MEM Letter].)

18         On November 13, 2018, County Defendants' counsel responded in a correspondence that they did

19  not agree with Plaintiff's designation challenges. (Merin Decl., ¶23 & Ex. 20 [11/13/18 JMR Letter].)

20         On November 19, 2018, Plaintiffs' counsel and County Defendants' counsel personally conferred

21  by telephone concerning the designation challenges. (Merin Decl., ¶24.) An agreement could not be

22  reached to resolve the dispute short of Court intervention. (*Id.*)

23         On November 27, 2018, County Defendants filed a "motion to retain confidentiality" under seal,

24  including a supporting memorandum ("Memo.") and declaration with exhibits.

25                              **III.   ARGUMENT**

26         County Defendants style the instant motion as a "motion to retain confidentiality." In actuality,

27  this is a motion for protective order, pursuant to Fed. R. Civ. P. 26(c). County Defendants' motion is

28  predicated on the stipulated protective order agreed to by the parties (ECF No. 34 ("SPO")), and

6

subsequently entered by the Court (ECF No. 35). That SPO permitted parties to this litigation to produce discovery with a "confidential" designation that would afford presumptive Fed. R. Civ. P. 26(c) protection over discovery so designated. (SPO at  4:1-6:2.) However, the SPO obligated designating parties to "take care to limit any such designation to specific material that qualifies [for protection] under the appropriate standards" and warned that "[d]esignations that are shown to be clearly unjustified ... expose the [d]esignating [p]arty to sanctions." (SPO at 6:12-21.) *See also* Fed. R. Civ. P. 37(a)(5)(B) & (C).[4] Accordingly, the SPO provides for a procedure—utilized in this case and giving rise to the instant motion—to challenge an improper designation. (SPO at 8:20-9:25.)

County Defendants identify the following materials as the subjects of requested protection:

1.   PC000142 – Video footage of Mr. Bangert;

2.   PC000143 – Video footage of Mr. Bangert;

3.   PC000144-156 – Various photos of Mr. Bangert;

4.   PC001526-1532 – Incident Report regarding Bangert Incident;

5.   PC000157-171 – Video footage regarding Mr. Coleman;

6.   PC000172-173 – Video footage regarding Mr. Kershner; and

7.   PC000174-177 – Video footage regarding Mr. Langley.

**A.      THE MOTION FAILS TO COMPLY WITH E.D. CAL. L.R. 251**

"[A] motion made pursuant to Fed. R. Civ. P. … 37 … , including any … motion for protective order, shall not be heard unless … the parties have set forth their differences and the bases therefor in a Joint Statement re Discovery Disagreement." E.D. Cal. L.R. 251(b). "All arguments and briefing that would otherwise be included in a memorandum of points and authorities supporting or opposing the motion shall be included in this joint statement, and no separate briefing shall be filed." E.D. Cal. L.R. 251(c) (underscore added). The joint statement "is meant to be a collaborative product between both sides." *Estate of Crawley v. Kings County*, 2015 U.S. Dist. LEXIS 59439, at *13-14 (E.D. Cal. May 6,

---

[4] "Like crying 'wolf' too often leads to skepticism, so does inappropriate cries of 'confidential.'" *Carver Int'l, Inc. v. Surfskate Indus., LLC*, 2016 U.S. Dist. LEXIS 193792, at *17 (C.D. Cal. May 25, 2016). Notably, every single piece of discovery produced by County Defendants in this litigation was designated as "Confidential" under the parties' SPO. (Merin Decl., Exs. 15, 16 & 17.) This essentially confirms that the SPO's proscription of "blanket" (SPO at 4:5-8) and "[m]ass, indiscriminate, or routinized designations" (SPO at 6:18-21) was disregarded by County Defendants.

2015); *see also Ahmadi v. United Cont'l Holdings, Inc.*, 2015 U.S. Dist. LEXIS 74604, *8-9 (E.D. Cal. June 8, 2015); *Weldon v. Dyer*, 2015 U.S. Dist. LEXIS 27924, at *6 (E.D. Cal. Mar. 6, 2015) (issuing order to show cause for non-compliance with E.D. Cal. L.R. 251's requirements).

As reflected by the instant motion, County Defendants did not comply with the E.D. Cal. L.R. 251's requirement that the parties collaboratively prepare a joint statement.[5] Instead, counsel filed a standalone Fed. R. Civ. P. 26(c) motion, as if governed by E.D. Cal. L.R. 230. Notably, the existence of the SPO did not—and cannot—change the applicability of this Court's Local Rules. *See, e.g.*, *Am. Eagle Wheel Corp. v. Tire & Wheel Outlet*, 2007 U.S. Dist. LEXIS 15408, at *3 n.2 (E.D. Cal. Feb. 20, 2007) ("The parties cannot bypass the[] provisions [of the Court's Local Rules] by stipulation with one another.").

Therefore, County Defendant's motion fails to comply with E.D. Cal. L.R. 251.

## B.     THE MOTION FAILS TO ESTABLISH "GOOD CAUSE"

A court may, for good cause, issue an order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense, including … specifying terms … for the disclosure or discovery…" Fed. R. Civ. P. 26(c)(1)(B). When a party seeks an order protecting from public disclosure information that has been produced in discovery but not filed in court, Fed. R. Civ. P. 26(c)'s "good cause" standard applies. *See Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (citing *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006)); *Phillips ex rel. Estates of Byrd v. Gen'l Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002). To establish good cause, the party seeking a protective order bears the burden of showing that specific prejudice or harm will result if no protective order is granted. *Phillips*, 307 F.3d at 1210-11. Broad and general allegations of harm do not constitute "good cause." *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

Initially, County Defendants' motion can—and should—be rejected on its face, for failure to cite to or analyze *any* authority controlling the outcome in this case. County Defendants' "Legal Argument"

---

[5] County Defendants' counsel know better. In *Maldonado v. County of Placer*, E.D. Cal. Case No. 2:17-cv-02384-TLN-CKD, involving the same counsel as the instant action, County Defendants' counsel filed a motion for protective order as a standalone motion. (ECF Nos. 17 & 19.) In opposition, the plaintiffs explained that the standalone motion did not comply with E.D. Cal. L.R. 251. (ECF No. 26 at 9:22-11:5.) One week later, rather than confront that deficiency, County Defendants settled the case. (ECF No. 27.)

8

consists of general statements of law concerning why protective orders are useful to litigants or how courts are conferred with broad discretion to enter protective orders. (Memo. at 5:6-9:12.) But "[r]eciting a general statement of the law is not equivalent to presenting argument on that law." *Archibald v. County of San Bernardino*, 2018 U.S. Dist. LEXIS 171243, at \*21 (C.D. Cal. Oct. 2, 2018). In other words, County Defendants fail to cite to *any* authority and analyze how it applies and demonstrates "good cause" to the circumstances present in this case.

For example, in *Kaur v. City of Lodi*, 2015 U.S. Dist. LEXIS 2739 (E.D. Cal. Jan. 9, 2015), the "[d]efendants s[ought] a protective order to prevent the public dissemination" of documents associated with an officer-involved shooting and personnel records of the involved officers. *Id.*, at \*19-21. The defendants argued that "all investigative documents" and "everything that fits into the [defendant] officers' personnel files, should be kept secret, and disclosed only within the litigation." *Id.*, at \*23. But defendants' arguments "cite[d] to practically no legal authority in support," other than "broad allegations of harm unsubstantiated by specific examples or articulated reasoning" which, the court recognized, "d[id] not support a good cause showing." *Id*. Rather, the court recognized that it was the defendants' *obligation* "point to [] specific harms that would result from public dissemination," but they failed even to make this "basic showing." *Id.*, at \*24. The same deficiencies are present here.

### 1.    The Public's Interest In Learning About Police Misconduct Precludes "Good Cause"

For the reasons explained herein, County Defendants' arguments fail to carry the "heavy burden" of establishing "good cause." *See Rivera v. NIBCO, Inc.*, 384 F.3d 822, 827 (9th Cir. 2004). However, because pretrial discovery is "presumptively public," *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1103 (9th Cir. 1999), "[t]he real issue for this Court to decide is whether the specific harm to the defendants outweighs the significant public interest in the disclosure of the disputed files." *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997).

"[W]here the case involves allegations of police misconduct, the public has a vested interest 'in assessing the truthfulness of allegations of official misconduct, and whether agencies that are responsible for investigating and adjudicating complaints of misconduct have acted properly and wisely.'" *Macias v. Cleaver*, 2016 U.S. Dist. LEXIS 85529, at \*14 (E.D. Cal. June 30, 2016) (quoting *Welsh v. City & County of San Francisco*, 887 F. Supp. 1293, 1302 (N.D. Cal. 1995)); *Rosales v. City of Chico*, 2015

9

U.S. Dist. LEXIS 126034, at *2-3 (E.D. Cal. Sep. 18, 2015) ("[W]here the case involves allegations of police misconduct, the public may have an interest in the case and the court must protect the public's right to access."); *see also Wiggins*, 173 F.R.D. at 229 ("Performance of police duties and investigations of their performance is a matter of great public importance.").

> Moreover, the [County]'s [sheriff] commented publicly on the video of the incident… , bringing the dispute even more squarely into the public eye. Piling onto the public interest in disclosure, the underlying lawsuit implicates citizens' federal and state constitutional rights *vis-à-vis* the operation of a public law enforcement agency. The public unquestionably holds a hefty interest in police force transparency, and especially so when fundamental rights are at stake.

*Harmon v. City of Santa Clara*, 323 F.R.D. 617, 624 (N.D. Cal. 2018). Defendant Bell convened a press conference wherein he exclaimed his desire to release the video of Plaintiff's beating but stated he could not do so due to "due process" concerns based on pending criminal charges. (Merin Decl., Ex. 1 [6/1/17 Sac Bee Article].) However, those charges have since been disposed. (Merin Decl., Exs. 3, 4 & 5 [Yaws, Madden & Villanueva Dockets].) And so has Defendant Bell's interest in transparency. County Defendants now disingenuously seek to keep the video and related materials under wraps. "Defendants cannot have it both ways; they cannot selectively and continuously release favorable information to media in an attempt to win support in the 'court of public opinion,' while simultaneously claiming prejudice and hardship will result if they are required to disclose discovery which materially contradicts their favorable accounts of the incident." *Kaur v. City of Lodi*, 2014 U.S. Dist. LEXIS 110079, at *7 (E.D. Cal. Aug. 7, 2014).

Therefore, the materials at issue "must receive public exposure in order to insure that the significant public interest is served." *Wiggins*, 173 F.R.D. at 230.

### 2. The Existence Of A Stipulated Protective Order Does Not Constitute "Good Cause"

County Defendants' argue that the parties' agreement to enter into a stipulated protective order under which the discovery was produced for the purpose of advancing settlement discussions rendered everything produced "informal discovery"—as opposed to "formal discovery." (Memo. at 5:7-6:23.) But County Defendants' distinction between "formal discovery" and "informal discovery" is unexplained and unsupported by citation to any authority.

"[County] Defendants' argument that they would be prejudiced because they relied on the

10

protective order in settling the case is inapt," where "[t]he Ninth Circuit has already considered and rejected this argument." *Mendez v. City of Gardena*, 222 F. Supp. 3d 782, 790 (C.D. Cal. 2015) (citing *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1354 (9th Cir. 2013)). "[B]ecause the protective order was a stipulated blanket order, [County Defendants] never had to make a 'good cause' showing under Fed. R. Civ. P. 26(c) of the need for protection of the [documents at issue] in the first place." *Beckman Indus.*, 966 F.2d at 476.

As set forth above, Plaintiff served Defendant County with discovery requests (Merin Decl., Ex. 11) but, nonetheless, "entertain[ed] extensions of time to respond" (*id.*, Ex. 10) and "delay[ed] the date by which responses [were] required, based on the parties' mutual agreement to pursue a class-wide settlement of this action" (ECF No. 28 at 7:15-18). However, these extensions did not transform all discovery produced by County Defendants and received by Plaintiff thereafter into something less than official, as County Defendants imply by labeling it "informal discovery." Clearly, the parties' definition of "informal discovery" differs but that is irrelevant here, where a Fed. R. Civ. P. 26(c) protective order will not issue absent "good cause." County Defendants cite to no authority for the proposition that their *subjective* belief that they were engaged in some sort of extra-judicial exchange of discovery requires that those documents produced be kept under seal.[6]

In any event, County Defendants did produce discovery in this case. (Merin Decl., Exs. 15, 16 & 17.) And that discovery was *specifically* relied upon by the parties in support of the application for preliminary approval of the class action settlement. (*See* ECF No. 57-1 at 8:26-9:2 (motion for preliminary approval arguing, unopposed, that "the parties conducted extensive investigation and discovery allowing them to assess the strengths and weaknesses of the case," including County Defendants' production of "5,227 pages'-worth of documents consisting of incident reports, sobering/safety cell/restraint logs, inmate grievances, and government claims and video-recordings of

---

[6] On the one hand, County Defendants argue that the discovery produced is subject to the parties' SPO covering discovery. On the other hand, County Defendants argue that the discovery produced was "informal discovery" outside of the "formal discovery" process. (*See* Memo. at 5:7-6:10.) It is one or other, but not both. If documents were produced as discovery, they are subject to the parties' SPO and this motion is properly before this Court. If documents were not produced as discovery, they are not subject to the parties' SPO and this motion is not properly before this Court—and, presumably, Plaintiffs are free to disclose the materials as they see fit.

incidents at the Auburn Main Jail.").) And this Court *specifically* relied on that application to grant preliminary approval of the class action settlement. (*See* ECF No. 59.) County Defendants' argument appears to be an attempt to revise the history of this case and, potentially, defeat the preliminary approval of the parties' class action settlement agreement.

### 3.    The Existence Of A Settlement Agreement Does Not Constitute "Good Cause"

County Defendants argue that "good cause" for a protective order exists because:

The Sheriff's Office is working incredibly hard to effectuate meaningful changes to its Correctional facilities, as agreed to in the settlement of this action. Such changes include adopting a comprehensive, new Use of Force Policy for its Correctional facilities, enhanced training, making changes to its grievance forms and adopting a proprietary software system which tracks and reports use of force by deputies and correctional officers. It would be a misstep backward in this process to publicly release the materials which were in large part the impetus for these changes.

(Memo. at 8:3-9.)

Plaintiffs can discern no logic from County Defendants' argument. Clearly, it is unsupported by any authority or verified facts that would, perhaps, make it any more comprehendible. *See, e.g., Beckman Indus.*, 966 F.2d at 476 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the [Fed. R. Civ. P.] 26(c) test"); *Moulay v. RagingWire Enter. Sols.*, 2010 U.S. Dist. LEXIS 122902, at *9 (E.D. Cal. Nov. 3, 2010) (denying protective order where "claims of harm [were] overwhelmingly framed in generalized terms, and defendant made no effort to submit either affidavits substantiating the projected harm from disclosure").

At most, Plaintiffs understand County Defendants' argument to be that because the facts of this case were "impetus for change" it would be a "misstep backward" to publicly disclose information about the facts associated with this case. (Memo. at 8:3-9.) But County Defendants' argument appears to be self-defeating where, <u>because</u> the facts of this case were "impetus for change," the public's interest in learning about the facts of this case is <u>particularly</u> <u>heightened</u>. *See, e.g., Mendez*, 222 F. Supp. 3d at 792 ("Defendants' argument backfires here—the fact that they spent the city's money, presumably derived from taxes, only strengthens the public's interest in seeing the videos."); *Harmon*, 323 F.R.D. at 623 ("The fact that $6.7 million in public funds were spent to settle the case further implicates a public interest in seeing the video."); *In re S. Ohio Corr. Facility*, 24 F. App'x 520, 530 (6th Cir. 2001) ("The settlement approved by the district court in the case at bar was funded with taxpayer dollars, and the

12

public has a legitimate interest in knowing how this money is being spent."); *Doe v. Marsalis*, 202 F.R.D. 233, 238-39 (N.D. Ill. 2001) (concluding that the public had an interest in documents concerning police misconduct lawsuit because the lawsuit was settled with public funds generated by taxpayers).

County Defendants also argue that Plaintiffs' designation challenge under the SPO is "belated" because "[t]he *Bangert* case has been settled, a settlement agreement fully executed, Mr. Bangert's individual settlement funded and Preliminary Approval of the Class Action granted." (Memo. at 8:10-27.) County Defendants' argument fails to account for the language of the settlement agreement that they, themselves, drafted and signed: "This AGREEMENT is subject to, and conditioned upon, FINAL APPROVAL." (ECF No. 57-4 at 25:15 [Class Action Settlement Agreement and Mutual Release] (underscore added).) In any event, the fact that a case has settled (or, in this case, preliminarily settled subject to final approval) does not extinguish the public's interest in learning about the case, where courts have entertained challenges to protective orders "years after the litigation concluded..." *See Mendez*, 222 F. Supp. 3d at 790 (citing *Blum*, 712 F.3d at 1353).

### 4.    Hypothetical "Tainted Jurors" Do Not Constitute "Good Cause"

County Defendants argue that "good cause" for a protective order exists because:

> The challenged documents have the very real potential of tainting potential jurors in other existing civil rights cases against the County, the Sheriff's Office, and individual officers, including cases pending in the Eastern District of California (See Reeves Dec.) A very real possibility exists that if the Challenged Materials (including the videos) were to be deemed nonconfidential and subject to release, they could go "viral", destroying the possibility of a fair jury trial.

(Memo. at 7:21-28.)

Initially, County Defendants' argument is purportedly supported by citation to the Declaration of Julia M. Reeves which, in turn, states: "My office represents the County, the Sheriff's Office and/or individual deputies in individual civil rights cases pending in the Eastern District and before other courts, which could be negatively impacted if the subject confidential documents/information were to be released." This unsupported boilerplate statement is insufficient and does not constitute "good cause." *See, e.g., Kaur*, 2014 U.S. Dist. LEXIS 110079, at *9 (where "Defendants [] s[ought] a protective order on the general grounds ... that an order [wa]s necessary to prevent tainting of the jury pool" and "Defendants cite[d] to practically no legal authority in support of th[o]se arguments" the "Court f[ound]

13

that broad allegations of harm unsubstantiated by specific examples or articulated reasoning" insufficient to "support a good cause showing"); *Welsh*, 887 F. Supp. at 1301 (where "Defendants argue[d] that a protective order [wa]s necessary to ensure a fair trial because pretrial publicity would necessarily overwhelm the possibility of a fair public trial," the court "concluded that defendants' broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, did not establish good cause for a protective order on this basis.").

"The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179 (citing *Foltz v. State Farm Mut. Auto. Inc. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003)); *see also Mendez*, 222 F. Supp. 3d at 792 ("Defendants cannot assert a valid compelling interest in sealing the videos to cover up any wrongdoing on their part or to shield themselves from embarrassment.").

> Pretrial publicity alone does not preclude a fair trial. As the Ninth Circuit stated in *Seattle Times Co. v. United States District Court for the Western District of Washington*, 845 F.2d 1513 (9th Cir. 1988), "Recent more highly publicized cases indicate that most potential jurors are untainted by press coverage despite widespread publicity. . . . This court did not find the pervasive pretrial publicity conclusive." *Id.* at 1517 (citations omitted).
>
> Besides, the mechanism of change of venue as well as careful jury selection can ensure a fair trial. In reversing the district court's order in the John DeLorean criminal case prohibiting pretrial public dissemination of the government's surveillance tapes generated during its investigation of the defendants, the Ninth Circuit observed that "the circuit courts have repeatedly found *voir dire* to be a viable alternative to restraints on the press, even in cases attracting massive publicity." *CBS v. United States Dist. Court for the Cent. Dist. of Cal.*, 729 F.2d 1174, 1182 (9th Cir. 1983). Therefore, defendants' right to a fair trial can be protected by careful and vigorous *voir dire*, and the prospect of overwhelming pretrial publicity, while it may test the ethical behavior of counsel, does not in itself provide good cause for issuing a protective order.

*Welsh*, 887 F. Supp. at 1301-02.

"[T]his Court must refuse requests to engage in damage control on behalf of the Defendants." *Macias*, 2016 U.S. Dist. LEXIS 85529, at *14. County Defendants' concern about the public learning about <u>actual</u> <u>documented</u> <u>facts</u> is unavailing and, frankly, concerning. "[T]he publication of details surrounding Plaintiff's case, though arguably unflattering to Defendants, does not in and of itself serve to gratify a private spite. To the contrary, the documents here are not scandalous or tawdry but involve

14

incidents that were, in large part, sustained by Defendants' own investigators." *Id.*, at \*14-15 (internal citation omitted). (*See also* Merin Decl., Exs. 6 & 7 [IA Complaint & Finding].) "[T]here is little concern that the documents are utterly meritless serving purely to circulate libelous or other baseless statements." *Id.*

### 5. Revealing The Identities Of Involved Officers Does Not Constitute "Good Cause"

County Defendants argue that "good cause" for a protective order exists because:

> [T]here are individual officers featured in the subject videos and identified on the incident reports, who were not criminally charged and <u>not</u> named in Mr. Bangert's civil Complaint. Release of the challenged documents could unfairly destroy the featured officers' reputations by permitting them to be unfairly lumped with those who were named or criminally charged.

(Memo. at 7:26-8:2.)

The officers to whom County Defendants refer are Aubrey R. Harris and M. Ramirez, who held Plaintiff's arms behind his back, preventing Plaintiff from protecting himself, while Defendant Madden relentlessly punched, kneed, and choked him and Defendant Yaws repeatedly tased him from behind (*see* PC000142-43 [Video]), then filed false incident reports attempting to justify the use of excessive force (*see* PC001526-32 [Reports]). Whether it would be "unfair" to "lump" those officers in "with those who were named in the civil suit or criminally charged" is extremely debatable—which is exactly the point. *See, e.g., Johnson v. Parchment Sch. Dist.*, 2006 U.S. Dist. LEXIS 28230, at \*9-11 (W.D. Mich. May 5, 2006) (finding alleged "interest in not being associated with wrongdoing" to be "tenuous," where the case was settled before any determination of the merits). If the public is deprived of the materials in support of these disputes, there will be no debate to have, effectively extinguishing the public's "hefty interest in police force transparency." *See, e.g., Harmon*, 323 F.R.D. at 624; *Welsh*, 887 F. Supp. at 1302; *Macias*, 2016 U.S. Dist. LEXIS 85529, at \*14.

In any event, "[t]he only valid privacy interest in this case belongs to the Plaintiffs, who have made abundantly clear that they wish the videos to be made available to the public." *Mendez*, 222 F. Supp. 3d at 792. Aubrey R. Harris and M. Ramirez possess "a limited right of privacy, given their status as public servants and the public's interest in monitoring their behavior." *See Gordon v. City & County of San Francisco*, 2004 U.S. Dist. LEXIS 20021, at \*12 (N.D. Cal. Apr. 30, 2004); *Lissner v. U.S. Customs Serv.*, 241 F.3d 1220, 1223 (9th Cir. 2001) ("[Public law enforcement officers'] privacy interests are

15

somewhat reduced."); *see also McGee v. City of Chicago*, 2005 U.S. Dist. LEXIS 30925, at *11 (N.D. Ill. June 23, 2005) ("The Defendant Officers are public servants, and 'privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny.'" (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994)). They "know[] that what [they] say[] or write[] could lead to criminal prosecution of other officers or to their termination from the force." *Macias*, 2016 U.S. Dist. LEXIS 85529, at *21 n.6; *see also Welsh*, 887 F. Supp. at 1300 ("[I]t would have been improper for police investigators to make any promises of confidentiality."). The fact that Aubrey R. Harris and M. Ramirez fortuitously escaped being identified (beyond "Doe" designation) in a civil lawsuit for their involvement in Plaintiff's beating does not present a valid justification for protecting their identities.

Therefore, County Defendants' motion for protective order must be denied for failure to demonstrate "good cause" and specific prejudice or harm that will result if no protective order is granted.

## C.   THE MOTION FAILS TO ESTABLISH "COMPELLING REASONS"

Even if County Defendants could demonstrate "good cause" to obtain a protective order over the materials at issue, Plaintiffs will append the materials to the motion for final approval. That motion constitutes a "dispositive" motion. *See Mitchell v. Cate*, 2016 U.S. Dist. LEXIS 94791, at *6 (E.D. Cal. July 19, 2016) ("grant[ing] final approval to the Stipulated Settlement … fully addresse[d] and dispose[d] of the class claims in the case"); *see also White v. Sabatino*, 2007 U.S. Dist. LEXIS 69178 (D. Haw. Sept.17, 2007) (motion to enforce or set aside a settlement agreement is dispositive (citing *Boskoff v. Yano*, 217 F. Supp. 2d 1077, 1084 (D. Haw. 2001)).

When documents are attached to a dispositive motion, a party requesting to seal a document filed with a dispositive motion must demonstrate "compelling reasons." *Kamakana*, 447 F.3d at 1180. To satisfy the "compelling reasons" standard, compelling reasons justifying the sealing of court records generally exist "when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978)).

The materials at issue in this case cannot meet that onerous standard, for the same reasons discussed above with respect to the "good cause" standard. *See*, *e.g.*, *Macias*, 2016 U.S. Dist. LEXIS

16

85529, at *10-22. Moreover, without this supporting material, a court cannot completely assess the propriety of final approval—*e.g.*, "the strength of the plaintiff's case." *See Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (identifying requisite factors to be assessed prior to granting final approval).

Therefore, County Defendants' motion for protective order must be denied, to the extent that it attempts to preclude Plaintiffs' attachment of the materials at issue to a motion for final approval because "compelling reasons" do not support the sealing of the materials.

**D.     PLAINTIFFS ARE ENTITLED TO ATTORNEYS' FEES IN OPPOSITION**

Fed. R. Civ. P. 37(a)(5)(B) "governs the award of attorney's fees to the party successfully resisting [a] discovery motion…" *Kaur v. City of Lodi*, 2015 U.S. Dist. LEXIS 69161, at *2 n.1 (E.D. Cal. May 19, 2015). "If the motion [for protective order] is denied, the court … must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party … who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," unless "the motion [for protective order] was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B); *see also* Fed. R. Civ. P. 26(c)(3).

Imposition of discovery sanctions is committed to a court's discretion, *Yeti By Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001), and a court is "not required to find bad faith before it c[an] impose *monetary* sanctions," *Bissell v. United States*, 321 Fed. Appx. 549, 552 (9th Cir. 2008). "The test for substantial justification is one of reasonableness." *United States v. First Nat'l Bank*, 732 F.2d 1444, 1447 (9th Cir. 1984). "[E]xpenses should ordinarily be awarded unless a court finds that the losing party acted justifiably in carrying this point to court." Fed. R. Civ. P. 37(a) Advisory Committee Notes (1970 Amend.).

Defendants' conduct in seeking a protective order was not "substantially justified." *See*, *e.g.*, *Kaur*, 2015 U.S. Dist. LEXIS 69161, at *2-3 (imposing sanctions where the defendant "sought a blanket protective order" and counsel argued only that they held "a 'good faith belief'" that the documents were subject to a protective order). As discussed above, and reflect by County Defendants' failure to support any of their argument with applicable authority (including their related motion to seal), there was no basis for designating the video and reports at issue as "Confidential" under the terms of the parties' SPO.

17

Moreover, County Defendants failed to comply with this Court's mandatory procedures for sealing Court documents, pursuant to E.C. Cal. L.R. 141, and obtaining a protective order, pursuant to E.D. Cal. L.R. 251.

Accordingly, Plaintiff is *entitled* to an award of "reasonable expenses incurred in opposing the motion [for protective order], including attorney's fees"—where the Court "must" provide for such an award—after "giving [County Defendants] an opportunity to be heard," pursuant to Fed. R. Civ. P. 37(a)(5)(B). Attached hereto is a declaration of reasonable fees expended in opposing the instant motion, to date. (Merin Decl., ¶¶25-27 (documenting 16.5 hrs. expended for a total of $4,425.00 claimed).) Subsequent proceedings and efforts may require that this calculation be supplemented to include additional time and expenses. (*Id.*, ¶28.)

Therefore, sanctions should issue against Defendants for the filing of the instant motion.

## IV.   CONCLUSION

County Defendants knew or should have known that this motion for protective order directly conflicts with controlling Ninth Circuit authority. *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records."). Accordingly, Plaintiffs Beau Bangert and the Settlement Class respectfully request that Defendants County of Placer, Placer County Sheriff's Office, and Devon M. Bell's motion for protective order be denied.

Dated: January 3, 2019                                 Respectfully Submitted,

By: _____
    Mark E. Merin
    Paul H. Masuhara
    LAW OFFICE OF MARK E. MERIN
    1010 F Street, Suite 300
    Sacramento, California 95814

    Attorneys for Plaintiffs
    BEAU BANGERT
    and the Settlement Class

18