Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:     (916) 443-6911
Facsimile:     (916) 447-8336
E-Mail:        mark@markmerin.com
               paul@markmerin.com

  Attorneys for Plaintiffs
  BEAU BANGERT
  and the Settlement Class

Patrick H. Dwyer, SBN 137743
P.O. Box 1705
Penn Valley, CA 95946
Tel: (530) 432-5407; Fax: (530) 432-9122
Email: pdwyer@pdwyerlaw.com

  Associated Counsel for the Settlement Class

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| BEAU BANGERT, et al., | Case No. 2:17-cv-01667-KJN |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| vs. | |
| COUNTY OF PLACER, et al., | |
| Defendants. | |
| | Date:       March 28, 2019 |
| | Time:       10:00 a.m. |
| | Location:   Robert T. Matsui U.S. Courthouse 501 I Street Sacramento, California 95814 |
| | Courtroom:  25 (8th Floor) |
| | Magistrate Judge:   Hon. Kendall J. Newman |

# TABLE OF CONTENTS

I.   **INTRODUCTION**..................................................................................................1

II.  **STATEMENT OF RELEVANT FACTS**.........................................................1

   A.   **THE FACTS GIVING RISE TO THIS ACTION** ................................1

   B.   **THE SHERIFF'S PRESS CONFERENCE** ........................................2

   C.   **THE CRIMINAL PROCEEDINGS** .....................................................2

   D.   **THE GOVERNMENT CLAIMS** ..........................................................3

   E.   **THE CITIZEN'S COMPLAINTS** ........................................................3

   F.   **THE LITIGATION**..................................................................................3

   G.   **THE TERMS OF THE CLASS ACTION SETTLEMENT AGREEMENT**...........................4

   H.   **THE CLASS RESPONSE TO THE CLASS ACTION SETTLEMENT AGREEMENT**........6

III. **ARGUMENT**..........................................................................................................6

   A.   **FED. R. CIV. P. 23(A) & (B): CLASS CERTIFICATION**..................6

     1.   Fed. R. Civ. P. 23(a): Class Prerequisites ..................................6

       *a.*   *Numerosity* .....................................................................6

       *b.*   *Commonality* ..................................................................7

       *c.*   *Typicality*........................................................................8

       *d.*   *Adequacy of Representation* .........................................9

     2.   Fed. R. Civ. P. 23(b)(2): Jail Changes Settlement Class ...........9

     3.   Fed. R. Civ. P. 23(b)(3): Force Settlement Class.....................10

       *a.*   *Predominance* .............................................................10

       *b.*   *Superiority*...................................................................11

   B.   **FED. R. CIV. P. 23(E): FAIRNESS FACTORS** ..............................12

     1.   Strength of Plaintiffs' Case......................................................13

     2.   Risk, Expense, Complexity, and Duration of Further Litigation................13

     3.   Risk of Class Action Status Through Trial ...............................13

     4.   Amount Offered in Settlement..................................................13

     5.   Extent of Discovery Completed and the Stage of the Proceedings ...........14

i

6.    The Experience and Views of Counsel ........................................................14

7.    Presence of Governmental Participation ....................................................15

8.    Reaction of Class Members to the Proposed Settlement ............................15

**C.    PRE-CLASS CERTIFICATION SETTLEMENT FACTORS** ..................................15

1.    Proportion of Distribution ..........................................................................15

2.    "Clear Sailing" Agreement .........................................................................16

3.    Reversion of Unclaimed Fees/"Kicker" Provision ....................................16

**D.    FED. R. CIV. P. 23(H): ATTORNEYS' FEES AND COSTS AWARD** ....................16

1.    Attorneys' Fees ...........................................................................................17

    a.    *Percentage-Of-The-Fund Method* ...................................................17

    b.    *Lodestar Method* .............................................................................18

        i.    Mark E. Merin ...........................................................................18

        ii.   Patrick H. Dwyer ......................................................................19

2.    Costs ............................................................................................................19

**E.    CLASS REPRESENTATIVE INCENTIVE AWARD** .............................................19

**IV.   CONCLUSION** .................................................................................................20

**TABLE OF AUTHORITIES**

Cases

*Aichele v. City of Los Angeles*, 314 F.R.D. 478 (C.D. Cal. 2013) ................................................8

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ..............................................................9, 12

*Anderson v. Garner*, 22 F. Supp. 2d 1379 (N.D. Ga. 1997) ...........................................8

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ...........................................................8

*Arnold v. U.S. Theatre Circuit, Inc.*, 158 F.R.D. 439 (N.D. Cal. 1994) ...............................7

*Asghari v. Volkswagen Grp. of Am.*, 2015 U.S. Dist. LEXIS 188824 (C.D. Cal. May 29, 2015)13, 15, 16, 17

*Blum v. Stenson*, 465 U.S. 886 (1984) ...........................................................................18

*Boeing Co. v. Van Gernert*, 444 U.S. 472 (1980) .............................................................17

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ...............................................14

*Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013 (11th Cir. 1992) ........................................14

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)...............................12, 15

*Conner v. Placer County*, 2018 U.S. Dist. LEXIS 8296 (E.D. Cal. Jan. 18, 2018)...................19

*Connick v. Thompson*, 563 U.S. 51 (2011) ......................................................................13

*Fish v. St. Cloud State Univ.*, 295 F.3d 849 (8th Cir. 2002) ............................................18

*Florida v. Dunne*, 915 F.2d 542 (9th Cir. 1990)..............................................................17

*General Tel. Co. v. EEOC*, 446 U.S. 318 (1980)..................................................................7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................................8, 9, 10, 12, 15

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992).............................................8

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ............................................................18

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964) ..........................7

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...............................................................16, 18

*Hopkins v. Stryker Sales Corp.*, 2013 U.S. Dist. LEXIS 16939 (N.D. Cal. Feb. 6, 2013) ..............17

*Horton v. City of Santa Maria*, ___ F.3d ___, 2019 U.S. App. LEXIS 3313 (9th Cir. Feb. 1, 2019)........11

*Huynh v. Harasz*, 2015 U.S. Dist. LEXIS 154078 (N.D. Cal. Nov. 12, 2015)...........................8

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D. Cal. 1988) ......................................7

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)..............15, 16, 17, 18

iii

*In re Media Vision Technology Secs. Litig.*, 913 F. Supp. 1362 (N.D. Cal. 1996)..................................19

*In re Pacific Enterprises Securities Litigation*, 47 F.3d 373 (9th Cir. 1995) ..............................14

*Ingles v. City of New York*, 2003 U.S. Dist. LEXIS 2453 (S.D.N.Y. Feb. 18, 2003)................................10

*Jordan v. County of Los Angeles*, 669 F.2d 1311 (9th Cir. 1982) ........................................7

*Kincaid v. City of Fresno*, 244 F.R.D. 597 (E.D. Cal. 2007)..........................................7, 12

*Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292 (D. Nev. 2014) ...........................9, 11

*Lehr v. City of Sacramento*, 2013 U.S. Dist. LEXIS 42014 (E.D. Cal. Mar. 22, 2013).............................18

*Lehr v. City of Sacramento*, 259 F.R.D. 479 (E.D. Cal. 2009) ..................................................7

*McGowan v. County of Kern*, 2018 U.S. Dist. LEXIS 96236 (E.D. Cal. June 7, 2018) ...........................11

*Meyer v. Portfolio Recovery Assocs. LLC*, 707 F.3d 1036 (9th Cir. 2012) ................................8

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ......................................................6

*Multi-Ethnic Immigrant Workers Org. Net. v. City of Los Angeles*, 246 F.R.D. 621 (C.D. Cal. 2007)8, 9, 11

*Ostling v. City of Bainbridge Island*, 2012 U.S. Dist. LEXIS 140983 (W.D. Wash. Sep. 28, 2012).........11

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ......................................................9

*Rodriguez v. County of Los Angeles*, 891 F.3d 776 (9th Cir. 2018) ........................................11

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ........................................19

*Rosas v. Baca*, 2012 U.S. Dist. LEXIS 79344 (C.D. Cal. June 7, 2012)........................................10

*Rutti v. Lojack Corp., Inc.*, 2012 U.S. Dist. LEXIS 107677 (C.D. Cal. July 31, 2012) ...........................19

*Schiller v. David's Bridal, Inc.*, 2012 U.S. Dist. LEXIS 80776 (E.D. Cal. June 11, 2012) ......................17

*Schilling v. TransCor Am., LLC*, 2010 U.S. Dist. LEXIS 20786 (N.D. Cal. Feb. 16, 2010) ...................12

*Schwartz v. Sec'y of Health and Human Serv.*, 73 F.3d 895 (9th Cir. 1995) ...........................18

*Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003) ......................................................20

*Turano v. County of Alameda*, 2019 U.S. Dist. LEXIS 21123 (N.D. Cal. Feb. 8, 2019).........................11

*Van de Kamp v. Bank of Am.*, 204 Cal. App. 3d 819 (Cal. Ct. App. 1988)................................20

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010)........................................6

*Velazquez v. City of Long Beach*, 793 F.3d 1010 (9th Cir. 2015) ........................................11

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)........................................17

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) ..........................................10

*Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518 (1st Cir. 1991) ...........................................16

*Weinberger v. Thornton*, 114 F.R.D. 599 (S.D. Cal. 1986)............................................................................8

*Whiteway v. FedEx Kinkos Office & Print Servs., Inc.*, 2007 U.S. Dist. LEXIS 95398 (N.D. Cal. Dec. 17, 2007) ...........................................................................................................................................................20

*Widrig v. Apfel*, 140 F.3d 1207 (9th Cir. 1998) ........................................................................................18

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ................................................10, 12

RULES

Fed. R. Civ. P. 23(a) ....................................................................................................................................6

Fed. R. Civ. P. 23(a)(1) ...............................................................................................................................6

Fed. R. Civ. P. 23(a)(2) ...............................................................................................................................7

Fed. R. Civ. P. 23(a)(3) ...............................................................................................................................8

Fed. R. Civ. P. 23(a)(4) ...............................................................................................................................9

Fed. R. Civ. P. 23(b)(2) ...............................................................................................................................9

Fed. R. Civ. P. 23(b)(3) .............................................................................................................................10

Fed. R. Civ. P. 23(e) ..................................................................................................................................12

Fed. R. Civ. P. 23(h) .............................................................................................................................16, 19

## I.    **INTRODUCTION**

Plaintiffs Beau Bangert and the Settlement Class move the Court for final approval of the parties' Class Action Settlement Agreement (ECF No. 57-4 [Settlement Agreement]).

## II.   **STATEMENT OF RELEVANT FACTS**

### A.    **THE FACTS GIVING RISE TO THIS ACTION**

This case arises from the jailhouse beating of Plaintiff Beau Bangert ("Plaintiff")[1] at the Auburn Mail Jail by several correctional officers who either directly participated in the beating, aided and abetted the beating, and/or failed to report or failed to accurately report the excessive and unreasonable use of force of their fellow officers.

On May 14, 2017, Plaintiff, while experiencing an episode of mental-illness associated with his diagnosed schizophrenia, was repeatedly punched, kneed, and choked by Defendant Robert L. Madden ("Madden") and repeatedly tased by Defendant Megan C. Yaws ("Yaws"), while fellow officers Aubrey R. Harris and M. Ramirez[2] held Plaintiff's arms behind his back, preventing Plaintiff from defending himself from the onslaught. Plaintiff was then restrained and confined to a restraint chair, as he bled profusely. These events were largely captured on recordings. (Declaration of Mark E. Merin ("Merin Decl."), Ex. A [Recordings].) Plaintiff's injuries are reflected in photographs taken immediately after the beating. (*Id.*, Ex. B [Photos].) Thereafter, Defendants Madden and Yaws and fellow officers Aubrey R. Harris and M. Ramirez prepared and submitted false incident reports that materially misrepresented the incident and attempted to justify the beating. (*Id.*, Ex. C [Reports].)[3] For example:

a.    Defendant Megan C. Yaws falsely reported: "When the door was opened, Bangert widened his stance and began swinging at [] Madden."

---

[1] "Plaintiff" is referred to in the singular form where he and counsel were proceeding *prior to* September 7, 2018, after which time this Court preliminarily certified the Settlement Class (ECF No. 59).

[2] This action was settled before Plaintiffs received the opportunity to amend the complaint and properly identify Aubrey R. Harris and M. Ramirez as party-Defendants. Instead, their presence in the operative Complaint is denoted as "Doe" Defendants. (ECF No. 1 [Complaint].)

[3] Defendants sought to hide the video recordings, photos, and reports, including the identities of Aubrey R. Harris and M. Ramirez, from public disclosure, by moving for the sealing of all documents that even referenced those materials. (*See* ECF Nos. 60, 62, 67, 64, 65, 66 & 68.) This Court refused to engage in "damage control" on behalf of Defendants by rejecting those efforts. (ECF No. 71.)

b.   Deputy M. Ramirez falsely reported: "As the door to cell 27 was opened, Bangert attempted to punch at Madden." "Bangert attempted to punch and push back at Madden."

c.   Defendant Robert L. Madden falsely reported: "I hit B[angert] with the shield approximately in the middle of the cell. B[angert] stood his ground as we screamed at him to get on the ground. I hit B[angert] with the shield two more times trying to knock him over. B[angert] still stood his ground and at this point had his back against the wall." "At some point during the fight B[angert] had punched me in my right eye with a closed fist."

d.   Deputy Aubrey R. Harris falsely reported: "B[angert] … was attempting to strike at officers with his fists."

**B.   THE SHERIFF'S PRESS CONFERENCE**

On May 31, 2017, Defendant Devon M. Bell ("Bell"), the Placer County Sheriff, conducted a press conference wherein he announced that three deputies employed at the Auburn Main Jail, Defendants Madden and Yaws and Jeffrey J. Villanueva,[4] had been terminated as employees and arrested. (Merin Decl., Ex. D [SacBee article].) At the press conference, Defendant Bell stated that the "conduct was limited to a very small number of people." (*Id*.) Additionally, Defendant Bell stated that he would have liked to release the incriminating video to the public, but the Placer County District Attorney's Office had requested he not do so because "[i]t could color people's perspectives of what happened" and "[i]t's an ongoing criminal investigation and due process is absolutely key when you're talking about justice." (*Id*.)

**C.   THE CRIMINAL PROCEEDINGS**

On May 31, 2017, Defendants Madden and Yaws and ex-officer Villanueva were criminally charged in the Placer County Superior Court, Case No. 62-152693. (Merin Decl., Ex. E [Felony Complaint].) The Felony Complaint identified six alleged incidents of misconduct by Auburn Main Jail personnel and six subjects/victims of their abuse, with charges including "Assault by a Public Officer" and "Filing a False Report." (*Id*.)

On April 18, 2018, criminal charges against Defendant Yaws were dismissed. (*Id*., Ex. F [Yaws

---

[4] Jeffrey J. Villanueva was involved in the abuse of other inmates at the Auburn Main Jail, but was not involved in Mr. Bangert's beating.

2

criminal docket].)

On April 25, 2018, Defendant Madden pled *nolo contendere* to a charge of felony assault. (*Id.*, Ex. G [Madden criminal docket].)

On October 9, 2018, ex-officer Villanueva pled *nolo contendere* to a charge of felony assault. (*Id.*, Ex. H [Villanueva criminal docket].)

**D.   THE GOVERNMENT CLAIMS**

On June 15, 2017, Plaintiff submitted a government claims to the County of Placer. (Merin Decl., Ex. I [Government claim].) No response to the claim was ever provided.

On August 10, 2017, Plaintiff submitted a government claims to the County of Placer. (*Id.*, Ex. J [Amended government claim].) No response to the amended claim was ever provided.

**E.   THE CITIZEN'S COMPLAINTS**

On August 7, 2017, Plaintiff filed a citizen's complaint related to the May 14, 2017, beating he sustained at the Auburn Main Jail. (Merin Decl., Ex. K [Citizen' Complaint].)

On February 1, 2018, the Placer County Sheriff's Office stated that "[a]n internal investigation ha[d] been completed" concerning Plaintiff's citizen's complaint and "[a] finding of sustained ha[d] been assigned to the allegation of excessive use of force." (*Id.*, Ex. L [IA Finding].)

On January 28, 2019, Plaintiffs filed a citizen's complaint related to the May 14, 2017, beating Plaintiff Bangert sustained at the Auburn Main Jail, as well as other allegations that were not contained within the August 7, 2017, citizen's complaint. (*Id.*, Ex. M [2d Citizen's Complaint].)[5]

**F.   THE LITIGATION**

On August 11, 2017, Plaintiff filed a class action Complaint initiating this action and alleging various federal and state law claims. (ECF No. 1 [Complaint].) The Complaint's allegations stated that Plaintiff's beating was not an isolated incident but, rather, part of a pervasive policy or custom of excessive use of force by Auburn Main Jail personnel against inmates. (*Id.*)

On December 6, 2017, the action was related and reassigned based on the pendency of similar

---

[5] Defendants also sought to obtain an order relieving them of the obligation to conduct a statutorily-mandated investigation of this citizen's complaint, which was required by state law, Cal. Pen. Code § 832.5. (*See* ECF Nos. 73, 74 & 75.) This Court rejected that effort. (ECF No. 76.)

3

pending actions: *Langley v. Domeier*, Case No. 2:17-cv-00760-GEB-KJN; *Conner v. Placer County*, Case No. 2:17-cv-01830-TLN-DB; *Kershner v. Placer County*, Case No. 2:17-cv-02312-MCE-GGH; and *Coleman v. Placer County*, Case No. 2:17-cv-01579-WBS-CKD. (ECF No. 27 [Order].)

On March 8, 2018, a settlement conference was scheduled by the Court. (ECF No. 34 [Order].)

On May 15 and 16, 2018, the parties attended and participated in a settlement conference before the Court. (ECF Nos. 47 & 49 [Minutes].) At the conclusion of the settlement conference, the parties reached a verbal agreement to resolve both Plaintiff's individual and class claims. (ECF No. 49 [Minutes].)

On August 28, 2018, the parties' agreement was memorialized and execute in a "Class Action Agreement and Mutual Release." (ECF. No. 57-4 & Merin Decl., Ex. N [Settlement Agreement].)

On August 28, 2018, Plaintiff filed an unopposed application for preliminary approval of the class action settlement. (ECF No. 57 [Motion].)

On September 7, 2018, the Court preliminarily approved the class action settlement. (ECF No. 59 [Order].)

## G.    THE TERMS OF THE CLASS ACTION SETTLEMENT AGREEMENT

The proposed settlement offers two primary forms of relief: (i) significant monetary compensation to class members who allege they were subjected to excessive force and whose force claims are deemed "Compensable" under the terms of the Settlement ("Force Settlement Class"); and (ii) substantial jail changes in policy and practices, together with provisions for a 15-month reporting period for monitoring of compliance (which period can be extended by up to six months) during which the implementation of the changes will be monitored and subject to audit by Class Counsel and the Court ("Jail Changes Settlement Class"). (Merin Decl., Ex. N [Settlement Agreement].)

Under the proposed settlement, all individuals who were incarcerated in any Placer County Correctional Facility on or after August 11, 2015, and continuing until August 14, 2018, would be members of a Jail Changes Settlement Class, pursuant to Fed. R. Civ. P. 23(b)(1) and (b)(2), and would be beneficiaries of the jail policy changes agreed to as settlement of the putative class members' claims. The Jail Changes Settlement Class would include a subclass of persons, the Force Settlement Class, who were subjected to excessive force described in claim forms they submit, and therefore entitled to

4

PLAINTIFFS' MEMO. OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
*Bangert v. County of Placer*, United States District Court, Eastern District of California, Case No. 2:17-cv-01667-KJN

compensation, provided their claims are deemed Compensable under the terms of the Settlement Agreement. Compensation to which Force Settlement Class members would be entitled ranges from a minimum of fifteen hundred dollars ($1,500) for Compensable claims of being tased, pepper-sprayed, kicked or hit, subjected to control holds, take downs or hair pulls, to a maximum of one hundred thousand dollars ($100,000) for Compensable serious physical injuries.

The proposed settlement provides for the preliminary valuation of each submitted claim to be made by the Settlement Administrator based on information class members provide on claim forms and pursuant to the Settlement Award Calculation Method. Counsel for the parties may contest the preliminary valuations made by the Settlement Administrator—and may dispute whether a claim is Compensable. In the event the parties cannot resolve any such disputes, they will be submitted to the Court using a streamlined approach, and the Court's resolution will be final and binding.

The parties have met and are referring to the Court for final determination those claims as to which there are disputes. A total of up to One Million, Four Hundred Forty-Nine Thousand, Seven Hundred Dollars ($1,449,700) would be provided to fund the settlement, of which up to Forty Thousand Dollars ($70,000)[6] would be deducted for administration costs incurred by the Settlement Administrator, Fifty Thousand Dollars ($50,000) would be paid to the Representative Plaintiff as an incentive award to serve as the Representative Plaintiff, subject to court approval, and Four Hundred Seventy-Eight Thousand, Four Hundred and One Dollars ($478,401) would be paid to Class Counsel for attorneys' fees and costs, subject to court approval. If the total value of the claims approved as Compensable exceeded the amount available after deduction for claims administration, incentive payment, and attorneys' fees and costs, and taxes, the payments to class members would be reduced proportionately. If a balance exists in the settlement fund after all claims and other charges are paid, that balance will be returned to the County of Placer.

---

[6] The costs of claims administration exceeded the originally-estimated amount of $40,000. (Merin Decl., Ex. N [Settlement Agreement] at 21:24-26.) The anticipated costs "went up considerably, … primarily [due] to the class size," where the initial estimate was 3,000 persons but the actual number was about 15,000 persons. (Merin Decl., Ex. O [Admin. costs].) The parties' settlement agreement provides for the enlargement of the claims administration fee award, subject to this Court's "approval." (Merin Decl., Ex. N [Settlement Agreement] at 21:24-26.) A final accounting of the claims administration costs has yet to be received and, for that reason, the estimated maximum amount of $70,000 is requested for approval.

**H.   THE CLASS RESPONSE TO THE CLASS ACTION SETTLEMENT AGREEMENT**

Consistent with the terms of the Settlement Agreement, the Settlement Administrator contacted class members during the class claims period. (Merin Decl., Ex. P [Class statistics].) According to the Claims Administrator, the class response was as follows:

|  |  |
|---|---|
| **Claims Received:** | **478** |
| **Exclusions Received:** | **14** |
| **Objections Received:** | **1** |

(Merin Decl., ¶27.) Based on the parties' disputes concerning the compensability of submitted claims, Class Counsel anticipates that this Court will be required to make final determinations related to many of the 478 timely claims submitted. The following individuals timely requested exclusion, and should be excluded, from the class: Jacob Rader, Alexandria Chapa, Paul Lauterjung, Jeffrey Marsh, Douglas Patton, Hector Rodriguez, Joyce Wade, Heidi Dore, Brandon Martin, John A. Kelley, Michael Abeyta, Joal Osborne, Joshua Buehler, and Lisa Valdez. (*Id.*, ¶28.)[7] The single individual to file an objection to the class was Davood Khademi. (Merin Decl., ¶29 & Ex. Q [Khademi objection].)

### III.   <u>ARGUMENT</u>

**A.   FED. R. CIV. P. 23(a) & (b): CLASS CERTIFICATION**

"In order to approve a class action settlement, a district court must first make a finding that a class can be certified." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 485-86 (E.D. Cal. 2010) (citing *Molski v. Gleich*, 318 F.3d 937, 943, 946-50 (9th Cir. 2003)).

**1.   Fed. R. Civ. P. 23(a): Class Prerequisites**

There are four "prerequisites" for certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

***a.   Numerosity***

Numerosity requires a class "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability does not mean impossibility, [however,] … only … difficulty or

---

[7] These persons shall be excluded in addition to the previously-identified persons who submitted individual claims or lawsuits prior to preliminary approval: Derek Conner, Jacob Emerson Gillespie, Christopher M. Kershner, Brendan Coleman, Jordan White, and Christopher Langley. (ECF No. 57-5 [Excluded persons].)

inconvenience in joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). There is no set numerical cutoff used to determine whether a class is sufficiently numerous; courts must examine the specific facts of each case to evaluate whether the requirement has been satisfied. *General Tel. Co. v. EEOC*, 446 U.S. 318, 329-30 (1980). Plaintiffs need not state the exact number of potential members nor identify all the members of the class. *See*, *e.g.*, *Arnold v. U.S. Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994); *Lehr v. City of Sacramento*, 259 F.R.D. 479, 482 (E.D. Cal. 2009). "As a general rule, classes of 20 are too small, classes of 20-40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough." *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988).

In this case, numerosity is satisfied because Defendants' records produced in discovery, including incident reports, sobering/safety cell/restraint logs, inmate grievances, and government claims (Merin Decl., ¶23), the numerous contacts that Plaintiffs' counsel has had with putative class members (*id.*, ¶24), and, most significantly, the 478 claims submitted in response to the proposed settlement (*id.*, ¶27), confirms that a class of *at least* 40 or more members exists.[8]

### b. Commonality

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is construed liberally and the existence of some common legal and factual issues is sufficient. *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1320 (9th Cir. 1982). In fact, "plaintiffs need only point to a single issue common to the class." *Kincaid v. City of Fresno*, 244 F.R.D. 597, 602 (E.D. Cal. 2007). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). In civil rights cases, the commonality requirement is satisfied where the lawsuit challenges a "system-wide practice or policy that affects all of the putative class members."

---

[8] The factual record contradicts Defendant Bell's statements made at a May 31, 2017, press conference, wherein he announced, without providing any factual basis, that the misconduct of his subordinates "was limited to a very small number of people." (Merin Decl., Ex. D [SacBee article].) In any event, Defendant Bell appears to have abandoned this position, as reflected by his participation in this <u>class action</u> settlement agreement.

1    *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). "In such circumstance, individual factual

2    differences among the individual litigants or groups of litigants will not preclude a finding of

3    commonality." *Id.*

4            In this case, there exist common issues of law and fact, including whether policies or customs

5    existed that allowed use of excessive and unreasonable force against class members by Defendants'

6    personnel at the Auburn Main Jail, and, if so, whether class members experienced the violation of their

7    rights as a result of such policies or customs. *See, e.g., Multi-Ethnic Immigrant Workers Org. Network v.*

8    *City of Los Angeles*, 246 F.R.D. 621, 631 (C.D. Cal. 2007) ("[D]ecisions to … authorize the use of force

9    constitute the 'common core of salient facts' that support commonality."); *Anderson v. Garner*, 22 F.

10   Supp. 2d 1379, 1385 (N.D. Ga. 1997) (identifying common issues of "whether [defendants' employees]

11   used excessive force" and "whether [supervisory] [d]efendants … encouraged, facilitated, and ratified the

12   use of excessive force …, thereby creating a custom or policy of excessive force…"). "The common

13   questions of whether or not Defendants actually adopted a blanket policy and whether or not such a

14   policy is illegal will therefore resolve, in one stroke, the legal disputes at issue in this case." *Huynh v.*

15   *Harasz*, 2015 U.S. Dist. LEXIS 154078, at *20 (N.D. Cal. Nov. 12, 2015); *see also Aichele v. City of Los*

16   *Angeles*, 314 F.R.D. 478, 490 (C.D. Cal. 2013).

17           c.    ***Typicality***

18           Typicality requires a determination as to whether a named plaintiff's claims are typical of those of

19   the class members he seeks to represent. *See* Fed. R. Civ. P. 23(a)(3). "[R]epresentative claims are

20   'typical' if they are reasonably co-extensive with those of absent class members; they need not be

21   substantially identical." *Hanlon*, 150 F.3d at 1020. "'Typicality refers to the nature of the claim or

22   defense of the class representative, and not to the specific facts from which it arose or the relief sought.'"

23   *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Weinberger v. Thornton*, 114

24   F.R.D. 599, 603 (S.D. Cal. 1986)). Commonality and typicality "tend to merge" in that both factors

25   "serve as guideposts for determining whether, under the particular circumstances, maintenance of a class

26   action is economical and whether the named plaintiff's claim and the class claims are so interrelated that

27   the interests of the class members will be fairly and adequately protected in their absence." *Meyer v.*

28   *Portfolio Recovery Assocs. LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012) (internal quotation marks omitted).

8

In this case, for the same reasons that commonality is satisfied, as discussed above, so, too, is the requirement of typicality. Plaintiffs were subject to same violations of their rights, pursuant to the same policies or customs. Any "differences in physical contact and injury [do not] defeat typicality … because they are permissible variations within a class." *See Multi-Ethnic Immigrant Workers Org. Network*, 246 F.R.D. at 632.

### d.    Adequacy of Representation

The adequacy of representation requirement set forth in Fed. R. Civ. P. 23(a)(4) involves a two-part inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

First, there are no indications that Plaintiff Bangert has any conflicts of interest with the putative class and he is sufficiently motivated to vigorously pursue the interests of absent class members. (Merin Decl., ¶30.) *See also Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1305 (D. Nev. 2014). Second, Plaintiffs' counsel is aware of no conflicts of interest, is sufficiently motivated to vigorously pursue the interests of the absent class members, and is a qualified and experienced civil rights attorney with extensive experience litigating civil rights actions in federal courts. (Merin Decl., ¶31; Declaration of Patrick H. Dwyer ("Dwyer Decl."), ¶6.) Plaintiffs are also represented by qualified and competent counsel who has extensive experience and expertise prosecuting class actions in federal courts, in particular. (Merin Decl., ¶¶32-51.)

### 2.    Fed. R. Civ. P. 23(b)(2): Jail Changes Settlement Class

Certification of an injunctive/declaratory relief class is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Civil rights cases are "prime examples" of the types of Fed. R. Civ. P. 23(b)(2) classes courts certify. *See*, *e.g.*, *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997); *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014) ("[T]he primary role of this provision has always been the certification of civil rights class actions."). "It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged

9

practice, a class may nevertheless be appropriate." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

The circumstances present in this case are similar to many others where courts have found certification of an injunctive/declaratory relief classes appropriate, based on the alleged mismanagement of detention/correctional facilities and existence of policies or customs allowing for abuse against inmates/prisoners. *See, e.g.*, *Ingles v. City of New York*, 2003 U.S. Dist. LEXIS 2453, at \*23-27 (S.D.N.Y. Feb. 18, 2003) (certifying a Fed. R. Civ. P. 23(b)(2) class based on allegations of "supervisory complicity or acquiescence in abuse committed by officers and efforts by [] personnel to cover up unprovoked assaults" and "a policy of excessive force"); *Rosas v. Baca*, 2012 U.S. Dist. LEXIS 79344, at \*12-14 (C.D. Cal. June 7, 2012) (certifying a Fed. R. Civ. P. 23(b)(2) class based on allegations that "[s]heriff's command and supervisory staff have been and remain aware of the alleged pattern and practice of unlawful violence [against jail inmates] and are deliberately indifferent to it," "multiple deputies ignored … requests for a complaint form," and "Defendant has failed to rein in deputies' abusive behavior.").

### 3.    Fed. R. Civ. P. 23(b)(3): Force Settlement Class

Certification of a damages class is appropriate where (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### a.    Predominance

If common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then "there is clear justification for handling the dispute on a representative rather than on an individual basis," and the predominance test is satisfied. *Hanlon*, 150 F.3d at 1022. However, "if the main issues in a case require the separate adjudication of each class member's individual claim or defense, a [Fed. R. Civ. P.] 23(b)(3) action would be inappropriate." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (internal quotes & cites omitted). "The analysis is pragmatic and is more qualitative than quantitative. Common questions do not predominate if the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues leading to an inordinate number of evidentiary hearings."

10

*Kristensen*, 12 F. Supp. 3d at 1306 (fns. omitted).

In this case, the class claims allege federal liability against municipal entities (Defendants County of Placer and Placer County Sheriff's Office) that failed to investigate and discipline employees in the face of widespread constitutional violations and supervisory officials (Defendants Devon M. Bell) that created and mainted a culture of impunity, or a "turn-a-blind-eye" approach, for subordinates' use of unconstitutionally excessive force. *See*, *e.g.*, *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798-99 & 802-03 (9th Cir. 2018). The same allegations give rise to liability under state law. *See*, *e.g.*, *Turano v. County of Alameda*, 2019 U.S. Dist. LEXIS 21123, at *9 (N.D. Cal. Feb. 8, 2019). "[C]ommon issues in the … *Monell* claim[] and *respondeat superior* liability are more than sufficient to meet the predominance requirement of [Fed. R. Civ. P.] 23(b)(3)." *Multi-Ethnic Immigrant Workers Org. Network*, 246 F.R.D. at 634.

Notably, these types of policy or custom claims are fundamentaly different than individualized claims of excessive and unreasonable use of force by jail personnel against inmates, which necessarily involve "a fact-intensive inquiry requiring attention to all circumstances pertinent to the need for the force used." *See Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024 (9th Cir. 2015). "[M]unicipal defendants may be liable under § 1983 even in situations in which no individual officer is held liable for violating a plaintiff's constitutional rights." *Horton v. City of Santa Maria*, ___ F.3d ___, ___, 2019 U.S. App. LEXIS 3313, at *23 (9th Cir. Feb. 1, 2019). This is specifically true in the context of use of force cases. *See*, *e.g.*, *Ostling v. City of Bainbridge Island*, 2012 U.S. Dist. LEXIS 140983, at *13-26 (W.D. Wash. Sep. 28, 2012); *McGowan v. County of Kern*, 2018 U.S. Dist. LEXIS 96236, at *31-40 (E.D. Cal. June 7, 2018). In other words, the policy or custom alleged in this case on behalf of the class is not the same as, or dependent upon, any inidividualized excessive force claim alleged by any class member.

### b.    Superiority

To assess superiority of a class action as a means of resolution, courts examine the four factors set out in Fed. R. Civ. P. 23(b)(3)(A)-(D).

First, each class member has a limited interest in individually bringing his or her own action, as the damages arising from each constitutional violation may not be significant, or alternatively, each class member is not likely to pursue their individual claims given the fact that they are often ignorant of or

11

unable to assert his or her own rights. Moreover, many of the class members are disabled, marginalized, and/or poor. *See, e.g.*, *Zinser*, 253 F.3d at 1190; *Kincaid*, 244 F.R.D. at 607 ("Given Plaintiffs' lack of education, resources, and social acceptance, class members are unlikely to institute separate suits.").

Second, although other litigation concerning similar claims to those in this action is pending, as reflected by the Court's orders related those actions (ECF Nos. 27 & 42), none of those related actions alleges the class claims alleged in this action. *See Schilling v. TransCor Am., LLC*, 2010 U.S. Dist. LEXIS 20786, at *34 (N.D. Cal. Feb. 16, 2010) (the pendency of similar actions against the same defendant did not suggest that those actions were a superior method of adjudication compared to "a class action with the class represented by qualified counsel").

Third, to require individual class members to sue separately to recover for the claims alleged in this action would be impractical and would represent an undue burden. Individual cases could produce duplicative results, require redundant discovery, and burden this court with the same evidence or legal issues that can be adjudicated on a class-wide basis here. Given the potential size of the class and the relatively small compensatory damages, the cost of proving damages in separate trials would outweigh the potential recovery and make individual actions unfeasible. *See, e.g.*, *Kincaid*, 244 F.R.D. at 607.

Fourth, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* [Fed. R. Civ. P.] 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Prods.*, 521 U.S. at 620.

## B.   FED. R. CIV. P. 23(e): FAIRNESS FACTORS

A court must determine whether a proposed class settlement is fundamentally fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026. The factors in a court's fairness assessment will vary from case-to-case but, generally, includes consideration of:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

12

### 1. Strength of Plaintiffs' Case

As outlined above, the facts of Plaintiffs' case are strong. This is reflected by Defendants' early efforts to settle the case without substantial litigation. Plaintiff Bangert's experience as a Representative Plaintiff is particularly compelling, as demonstrated by the recordings and reports obtained in connection therewith. (Merin Decl., Ex. A [Recordings], Ex. B [Photos] & Ex. C [Reports].)

However, Plaintiffs are cognizant that the development of similar evidence related to the members of the Settlement Class would be time consuming and may not prove as compelling as that of the Representative Plaintiff. Additionally, Defendants contest liability as to the Settlement Class. Further, the claims asserted on behalf of the Settlement Class represent a theory of municipal liability "at its most tenuous." *See Connick v. Thompson*, 563 U.S. 51, 61 (2011).

It was the consideration of these factors that resulted in the crafting of the settlement agreement in this case. *See, e.g.*, *Asghari v. Volkswagen Grp. of Am., Inc.*, 2015 U.S. Dist. LEXIS 188824, at *50 (C.D. Cal. May 29, 2015) (the fact the liability is contested "favors a finding that the settlement is fair.").

### 2. Risk, Expense, Complexity, and Duration of Further Litigation

If this case is not resolved through settlement, continued litigation will be expensive and lengthy, because class discovery will necessarily be extensive, and will require the retention of costly expert witnesses. (Merin Decl., ¶26.) It is also likely that the parties would have engaged in substantial motion practice before this case reached trial. (*Id.*) On that basis, this factor supports approval of the settlement. *See Asghari*, 2015 U.S. Dist. LEXIS 188824, at *51-55 (collecting cases).

### 3. Risk of Class Action Status Through Trial

Plaintiffs acknowledge that they would face significant challenges to establishing "commonality" under Fed. R. Civ. P. 23(a)(2) and "predominance" under Fed. R. Civ. P. 23(b)(3), given the inherently fact-based determinations of excessive or unreasonable use of force claims and the difficulty of establishing class-wide policy or custom claims. *See, e.g.*, *Connick*, 563 U.S. at 61. If the court were to determine it was not appropriate to certify a class, unrepresented class members might lose their chance to recover anything at all. *See Asghari*, 2015 U.S. Dist. LEXIS 188824, at *56-57 (collecting cases).

### 4. Amount Offered in Settlement

For the Jail Changes Settlement Class, in addition to changes in jail policy and procedures

13

relating to uses of force, and the reporting of such uses of force, inmate grievances and uses of force will be monitored for a minimum of 15 months, and possibly for as long as 21 months, to ensure proper implementation of the revised and improved policies and procedures. For the Force Settlement Class, the proposed settlement provides compensation to persons, provided their claims of excessive force are deemed Compensable, who suffered even minor injuries while in Placer County Correctional Facilities from August 11, 2015, up until the August 14, 2018, and higher compensation of $5,000, $50,000, or $100,000 for more severe injuries, potentially benefiting a substantial number of persons who, were it not for this class action settlement, would likely have received no compensation. (*See* Merin Decl., Ex. N [Settlement Agreement].)

### 5.    Extent of Discovery Completed and the Stage of the Proceedings

Admittedly, settlement in this matter came early. However, Defendants produced 5,227 pages'-worth of documents consisting of incident reports, sobering/safety cell/restraint logs, inmate grievances, and government claims and video-recordings of incidents at the Auburn Main Jail as a basis for settlement negotiations. (Merin Decl., ¶23.) Additionally, a term of the settlement allows for continuous monitoring and audits of Defendants' facilities, in order to ensure compliance with the terms of the settlement. (Merin Decl., Ex. N [Settlement Agreement].) While Defendants attempted to seal discovery in this case, class counsel has successfully fought those efforts in order to achieve public access. (*See* ECF No. 71.) *See also Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992) ("It is immaterial whether the sealing of the record is an integral part of a negotiated settlement between the parties, even if the settlement comes with the court's active encouragement. Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case.").

### 6.    The Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995). Accordingly, "the recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). Plaintiffs' counsel is a qualified and experienced civil rights attorney with extensive experience litigating civil rights class actions in federal courts. (Merin Decl., ¶¶32-51.) Based on that

14

experience, Plaintiffs' counsel believes that the settlement negotiated and obtained in this case is fair, adequate, and reasonable. (Merin Decl., ¶25; Dwyer Decl., ¶7.)

### 7.     Presence of Governmental Participation

Defendants are state actors, reflecting "the presence of a governmental participant" in this case. *See Churchill Vill., LLC*, 361 F.3d at 575.

### 8.     Reaction of Class Members to the Proposed Settlement

"To gauge the reaction of other class members, it is appropriate to evaluate the number of requests for exclusion, as well as the objections submitted." *Asghari*, 2015 U.S. Dist. LEXIS 188824, at *68. During the class period in this case, 478 claims were received, 14 exclusions were received, and only a single objection was received. (Merin Decl., ¶¶27-29.) On a balance and "taken as a whole," *Hanlon*, 150 F.3d at 1026, these factors demonstrate that the settlement agreement is fundamentally fair, adequate, and reasonable, pursuant to Fed. R. Civ. P. 23(e).

## C.     PRE-CLASS CERTIFICATION SETTLEMENT FACTORS

Where a settlement agreement is negotiated prior to a class certification determination, "such agreements must with-stand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under [Fed. R. Civ. P.] 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Additional considerations include: "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id*. at 947 (internal quotations & citations omitted).

### 1.     Proportion of Distribution

The proportion of the distribution of the monetary settlement funds in this action is as follows:

| Fund Type | Fund Amount | Fund Percentage |
|---|---|---|
| Class Claims | $851,299 | 59% |
| Attorneys' Fees & Costs | $478,401 | 33% |
| Claims Admin. Fees & Costs | $70,000 | 5% |
| Representative Incentive | $50,000 | 3% |
| **TOTAL** | **$1,449,700** | **100%** |

15

Of course, this summary breakdown does not account for the fact that this case involves both monetary *and* declaratory benefits received by class members. In this case, "the attorneys' fees sought, while substantial, are not nearly as disproportionate as was the fee award at issue in *In re Bluetooth*," 83.2%, which the Ninth Circuit rejected. *See Asghari*, 2015 U.S. Dist. LEXIS 188824, at *89.

### 2.    "Clear Sailing" Agreement

"In general, a clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling." *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 520 n. 1 (1st Cir. 1991).

There exists a "clear sailing" provision in the parties' settlement agreement. Specifically, Defendants have agreed to the amounts of Class Counsels' "Fee and Expense Award" ($478,401) and the Representative Plaintiff's "Incentive Award" ($50,000). (*See* Merin Decl., Ex. N [Settlement Agreement] at 6:26-7:4 [¶¶38-39].) However, "despite the clear sailing provision, the class stands to receive a large and fair monetary award." *Asghari* 2015 U.S. Dist. LEXIS 188824, at *93.

### 3.    Reversion of Unclaimed Fees/"Kicker" Provision

A "kicker provision," which provides for the reversion of excess attorneys' fees to the defendant rather than to the class, "amplifies the danger of collusion already suggested by a clear sailing provision" because it "[t]he clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." *See In re Bluetooth*, 654 F.3d at 949. There is a "kicker provision" in the parties' settlement agreement that provides for the reversion of "any sum remaining … following 180 days after first distribution" of settlement funds to class members to the County of Placer. (*See* Merin Decl., Ex. N [Settlement Agreement] at 22:10-13 [¶85].) However, concerns related to existence of this "kicker provision," as discussed in *In re Bluetooth*, 654 F.3d at 949, are absent in this case where, as discussed *infra*, there are no excess attorneys' fees remaining in the settlement fund.

### D.    FED. R. CIV. P. 23(h): ATTORNEYS' FEES AND COSTS AWARD

"In a certified class action, the court may award reasonable attorney's fees … that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "It remains for the district court to determine what fee is 'reasonable.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

16

### 1.      Attorneys' Fees

"Courts calculate attorneys' fees using either the lodestar or percentage-of-the-fund method. In a lodestar analysis, the court multiplies the number of hours reasonably expended by counsel on the matter by a reasonable hourly rate and adjusts the result upward or downward depending on a variety of factors. In a percentage-of-the-fund analysis, the court awards a percentage of the class recovery as fees." *Asghari*, 2015 U.S. Dist. LEXIS 188824, at *122-23. "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." *In re Bluetooth*, 654 F.3d at 942; *see also Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990).

Class Counsel submits that the requested fee is reasonable, under either method which this Court may employ to analyze the fees issue. Moreover, since both methods generally encourage a court to "cross-check" the fee by comparing it to the result obtained after analysis of the alternate method, *see Asghari* 2015 U.S. Dist. LEXIS 188824, at *123-24 (collecting cases), for the convenience of the Court Class Counsel analyzes both methods.

### a.      Percentage-Of-The-Fund Method

"[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gernert*, 444 U.S. 472, 478 (1980). Courts may consider a number of factors in determining whether the percentage requested is fair and reasonable, including: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). More generally, however, "[t]he typical range of acceptable attorneys' fees under this approach in the Ninth Circuit is 20 percent to 33 and 1/3 percent of the total settlement value…" *See Schiller v. David's Bridal, Inc.*, 2012 U.S. Dist. LEXIS 80776, at *47 (E.D. Cal. June 11, 2012).

In this case, the requested amount of $478,401 represents 33% of the total settlement value. (Merin Decl., Ex. N [Settlement Agreement].) This amount is justified by the benefits obtained through this action which confers more than monetary relief, where changes in policy were effected and continuous monitoring remains in effect. On that basis, the fee requested is fair and reasonable, based on the percentage-of-the-fund.

17

### b.    Lodestar Method

The lodestar is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The lodestar "presumptively provides an accurate measure of reasonable attorney's fees." *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994). "The court may adjust [the lodestar] upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re Bluetooth*, 654 F.3d at 941-42. To assist the court in calculating the lodestar, counsel must submit "satisfactory evidence … that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11 (1984). The relevant community is that in which the district court sits. *See Schwartz v. Sec'y of Health and Human Serv.*, 73 F.3d 895, 906 (9th Cir. 1995). For example, declarations regarding the prevailing market rate in the relevant community may suffice to establish a reasonable hourly rate, *see Widrig v. Apfel*, 140 F.3d 1207, 1209 (9th Cir. 1998), and courts can also use survey data to evaluate the reasonableness of attorneys' rates, *see Fish v. St. Cloud State Univ.*, 295 F.3d 849, 852 (8th Cir. 2002).

#### i.    <u>Mark E. Merin</u>

In the Sacramento area, Mr. Merin charges a fee of $550/hr. (Merin Decl., ¶52.) Mr. Merin has been awarded fees above this hourly rate within the Eastern District of California. *See Baker v. Katehi*, E.D. Cal. Case No. 2:12-cv-00450-JAM-EFB ($580/hr.). This rate is particularly justified by courts' recognition of Mr. Merin's specialized skills and abilities. (Merin Decl., Ex. R [*Baker v. Katehi* transcript] at 2:6-3:16 (Mr. Merin "obviously deserve[s] the hourly rate that [he] charge[s]")); *Lehr v. City of Sacramento*, 2013 U.S. Dist. LEXIS 42014, at *21 (E.D. Cal. Mar. 22, 2013) ("Mr. Merin is one of the most experienced and successful civil rights attorneys in the Sacramento area…"). Additionally, a fellow local practitioner in the relevant community agrees that this is the prevailing market rate. (Declaration of Stewart L. Katz, ¶7.)

Mr. Merin has documented 482.05 hours'-worth of work on this matter, at $550/hr., for a lodestar total of $265,127.50. (Merin Decl., Ex. R [Merin hrs.] & ¶53.) In addition, Mr. Merin anticipates

18

spending a substantial amount of time defending the rights of the Settlement Class, following final

approval, due in large part to Defendants' contention that only two (2) of the 478 claims submitted by

class members are "Compensable." (*Id.*, ¶54.)

ii.   Patrick H. Dwyer

Mr. Dwyer charges a fee of $300/hr. and has been awarded fees at that rate by this Court. *See*

*Conner v. Placer County*, 2018 U.S. Dist. LEXIS 8296 (E.D. Cal. Jan. 18, 2018).

Mr. Dwyer has documented 218.3 hours'-worth of time on this matter, at $300/hr., for a total

lodestar of $65,490.00. (Dwyer Decl., ¶2.)

**2.   Costs**

"In a certified class action, the court may award … nontaxable costs that are authorized by law or

by the parties' agreement." Fed. R. Civ. P. 23(h). "Expenses such as reimbursement for travel, meals,

lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service,

mediation, exhibits, document scanning, and visual equipment are typically recoverable." *Rutti v. Lojack*

*Corp., Inc.*, 2012 U.S. Dist. LEXIS 107677, at *34 (C.D. Cal. July 31, 2012). Courts also have discretion

to reimburse consulting and expert witness fees. *See In re Media Vision Technology Secs. Litig.*, 913 F.

Supp. 1362, 1366-67 (N.D. Cal. 1996).

Mr. Merin has documented costs in the amount of $385.71. (Merin Decl., Ex. T [Merin costs] &

¶55.)

**E.   CLASS REPRESENTATIVE INCENTIVE AWARD**

"[I]t is well-established that the court may grant a modest incentive award to class

representatives, both as an inducement to participate in the suit and as compensation for time spent in

litigation activities, including depositions." *Asghari*, 2015 U.S. Dist. LEXIS 188824, at *154. Incentive

awards "are fairly typical in class action cases" and "are intended to compensate class representatives for

work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the

action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v.*

*West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

Initially, Class Counsel observes that Defendants agreed to the amount of Mr. Bangert's incentive

award. (Merin Decl., Ex. N [Settlement Agreement] at 6:26-7:4 [¶¶38-39].) After initiating this action,

19

Mr. Bangert actively participated in litigation. For instance, Mr. Bangert spent time participating in interviews, meetings, and telephone consultations with counsel, who required considerable information pertaining to his experiences in the Auburn Main Jail. (Merin Decl., ¶56.) Mr. Bangert also participated in the two-day mediation that culminated in the parties' class action settlement agreement. (*Id.*)

Mr. Bangert risked potential adverse judgment, if this case had been unsuccessful. In class action losses, class representatives are deemed the losing party that is liable for the prevailing party's costs and few individuals are willing to undertake that substantial risk, as reflected by the fact that all other lawsuits filed and coordinated with this action were <u>not</u> filed as class actions. *See Langley v. Domeier*, Case No. 2:17-cv-00760-GEB-KJN; *Conner v. Placer County*, Case No. 2:17-cv-01830-TLN-DB; *Kershner v. Placer County*, Case No. 2:17-cv-02312-MCE-GGH; *Coleman v. Placer County*, Case No. 2:17-cv-01579-WBS-CKD; and *White v. Placer County*, Case No. 2:18-cv-00026-MCE-GGH.

> "[T]he class representatives' dilemma -- they must balance the risk of liability against their potential recovery. . . While imposition of the entire cost burden on the named plaintiffs may have a chilling effect on the willingness of plaintiffs to bring class action suits, this effect easily may be outweighed by the potential recovery. All potential litigants must weigh costs of suit against likelihood of success and possible recovery before deciding to file suit. Those who choose to take the risks of litigation should be the ones who bear the costs when they are unsuccessful. . ."

*Whiteway v. FedEx Kinkos Office & Print Servs., Inc.*, 2007 U.S. Dist. LEXIS 95398, at *7 (N.D. Cal. Dec. 17, 2007) (quoting *Van de Kamp v. Bank of Am.*, 204 Cal. App. 3d 819, 869 (Cal. Ct. App. 1988)). Mr. Bangert risked this lawsuit having a negative impact on future opportunities by serving as the "face" of this lawsuit. *See, e.g., Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003) (fear of retaliation is a justification for representative incentive awards). In this computer age, "Google" can reveal extensive information and, due in large part to Mr. Bangert's serving as the representative, in this case, does reveal Mr. Bangert's experiences at the Auburn Main Jail. The lifespan of this lawsuit can be measured in years but Mr. Bangert's association with it will last a lifetime. Any adverse effects resulting from this should fairly be reflected in his incentive award.

## IV.     <u>CONCLUSION</u>

For the reason stated, the parties' Settlement Agreement is fair, adequate, and reasonable. Accordingly, Plaintiffs' respectfully request that the Court grant final approval, following the final fairness hearing.

Dated: March 7, 2019

Respectfully Submitted,

By: _____
    Mark E. Merin
    Paul H. Masuhara
    LAW OFFICE OF MARK E. MERIN
    1010 F Street, Suite 300
    Sacramento, California 95814
    Telephone:    (916) 443-6911
    Facsimile:    (916) 447-8336

    Attorneys for Plaintiffs
    BEAU BANGERT
    and the Settlement Class

21